**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 16-cv-01838-PAB-NYW

JENNIFER CHRISTOS,

        PLAINTIFF,

V.

HALKER CONSULTING, LLC;
MATTHEW HALKER; AND
TRAVIS HUTCHINSON,

        DEFENDANTS.

---

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

Defendants Halker Consulting LLC, Matthew Halker, and Travis Hutchinson (collectively, "Defendants"), hereby submit the following Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56, requesting judgment against Plaintiff, Jennifer Christos ("Plaintiff"), on all claims asserted in her Complaint and Jury Demand (Doc. No. 1) (the "Complaint").

## I.      INTRODUCTION

Defendant Halker Consulting LLC (the "Company") terminated the employment of Plaintiff for legitimate reasons, including one that was far beyond the Company's control. The Company is a nationwide provider of multi-disciplined engineering, design, project management, procurement, and field services for the oil and gas industry. It specializes in oil and gas surface facilities design and engineering. As goes the oil and gas industry, so goes the Company.

And so it went at the end of 2014 and into 2015.  The price of oil plummeted downward.  The Company's clients were cutting way back or, worse yet, going under.  To try and survive this precipitous collapse of the oil and gas industry, the Company had to shrink.  Unfortunately, this industry downturn left the Company with more employees than it had work for them to do.  While painful for everyone involved, the Company had to conduct multiple rounds of layoffs in 2015 to balance its cost structure against its contracting revenues.  Plaintiff was one of many employees included in these layoff rounds.

In the spring of 2015, Plaintiff's department, Project Management, was involved in one of these layoff rounds.  Tyler Farley, the *female* head of the Project Management Department, met with her three direct-report managers to evaluate the six project managers ("PMs") on her team through the use of a rating matrix.  This rating matrix consisted of qualities or attributes for which PMs were given a score from one to five.  These qualities or attributes were assigned weights from one to five.  Weighted scores under the rating matrix were then calculated for each PM, giving Ms. Farley a fair and neutral way to evaluate the PMs' performances relative to each other.

When Ms. Farley was informed that she needed to recommend two PMs for layoff in early May 2015, she relied on the rating matrix to do so.  The PM with the lowest weighted score – a score of 24.0 – was Mike Molter, a Caucasian male.  The PM with the second-lowest weighted score – a score of 29.7 – was Plaintiff.  Based on these scores, Ms. Farley recommended Mr. Molter and Plaintiff as the two PMs to be included in the May 2015 layoff.

It was the precipitous decline in the oil and gas industry and Plaintiff's rating matrix score in comparison to the other PMs in her department that resulted in Plaintiff being laid off

from the Company on May 1, 2015.  Yet, Plaintiff alleges that the Company decided to lay her off not for these legitimate reasons but instead to discriminate against her on the basis of sex or gender, specifically because of her pregnancy, in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the Pregnancy Discrimination Act.  But Plaintiff has no evidence of discrimination by the Company, direct or otherwise.  Under the familiar *McDonnell Douglas* burden-shifting framework applicable to Plaintiff's Title VII discrimination claim, the Company is entitled to judgment as a matter of law because it laid Plaintiff off on May 1, 2015 for legitimate reasons.

The Company is likewise entitled to judgment as a matter of law on Plaintiff's Title VII retaliation claim.  Once again, Plaintiff has no evidence that the Company included Plaintiff in the May 1, 2015 layoff to retaliate against her in any way.  Plaintiff's Title VII retaliation claim is a non-starter under *McDonnell Douglas* because Plaintiff cannot show that any issues she raised regarding Mr. Jimenez in August 2014, or anyone else for that matter, were causally connected to being included in the May 1, 2015 layoff over eight months later.  Even assuming, *arguendo*, that Plaintiff could meet her prima facie burden, the Company is still entitled to judgment as a matter of law on Plaintiff's Title VII retaliation claim because the Company laid Plaintiff off on May 1, 2015 for legitimate reasons.

Furthermore, Plaintiff's claim for Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA") interference fails as a matter of law because Plaintiff has no evidence that her expressed intention to take maternity leave beginning in June 2015 was causally connected to her inclusion in the May 1, 2015 layoff.  Indeed, Plaintiff never mentioned her future maternity leave as one of her own conjectures as to why she was included in the layoff.

Plaintiff's claim for intentional interference with contract by Messrs. Halker and Hutchinson fails as a matter of law for the elementary reason that Plaintiff had no employment contract with the Company with which anyone could interfere. Moreover, Plaintiff has no evidence that Messrs. Halker and Hutchinson purportedly "interfered" with this non-existent employment contract motivated solely by a desire to harm Plaintiff or to interfere with Plaintiff's employment at the Company, as required under well-established Colorado law.

For these reasons, and as explained in detail below, Defendants are entitled to summary judgment pursuant to Fed. R. Civ. P. 56 on all claims asserted in Plaintiff's Complaint.

## II. STATEMENT OF UNDISPUTED MATERIAL FACTS

1. The Company was founded in 2006 by Matt Halker, P.E., and provides engineering consulting services to the oil and gas industry. **Exhibit A** – L. Worth Dep., p. 112, ll. 16-19; **Exhibit B** – M. Halker Dep., p. 5, ll. 19-21; p. 8, ll. 12-15.

2. Plaintiff was hired by the Company as an Electrical Engineer III on October 28, 2013. **Exhibit C** – J. Christos Dep., p. 21, ll. 14-20; p. 23, ll. 17-19.

3. Plaintiff was an at-will employee, as outlined in her offer letter and the Company's Employee Handbook. **Exhibit C** – J. Christos Dep., p. 36, ll. 17-25; p. 38, ll. 8-12; **Exhibit D** – E. Lowry Dep., p. 116, l. 9 – p. 119, l. 9; **Exhibit H** – Employee Handbook, pp. 4, 31.

4. Plaintiff had no employment contract with the Company. **Exhibit C** – J. Christos Dep., p. 293, ll. 20-22; p. 295, l. 25 – p. 296, l. 4.

5. On or about May 5, 2014, Phil Jimenez was hired by the Company and Plaintiff began reporting to him. This also resulted in a change in departments and a new title of Project

Manager. **Exhibit C** – J. Christos Dep., p. 31, ll. 1-17 and 25; p. 32, ll. 1-7 and 17-24; p. 33, ll. 7-11; **Exhibit D** – E. Lowry Dep., p. 109, ll. 9-15.

6.     Plaintiff complained that she was being treated unfairly by her manager, Phil Jimenez, in August 2014 when she submitted a formal complaint to Mr. Hutchinson, the Company's former Chief Operations Officer, which he fully investigated, along with Mr. David Hart (the Company's former Chief Financial Officer), Mr. Edward Lowry (the Company's former Human Resources Director) and Ms. Lauren Worth (the Company's former Human Resources Manager), Plaintiff's complaints were fully investigated. **Exhibit C** – J. Christos Dep., p. 323, ll. 17-25; p. 324, ll. 1-8; **Exhibit D** – E. Lowry Dep., p. 120, l. 14 - p. 121, l. 12; p. 122, ll. 13-25; p. 218, l. 22 - p. 219, l. 25; p. 236, ll. 14-17; p. 237, l. 13 - p. 238, l. 8.

7.     Plaintiff made no further complaints. **Exhibit C** – J. Christos Dep., p. 153, ll. 18-21; p. 324, l. 1 - p. 327, l. 7.

8.     Mr. Jimenez's employment was terminated on December 3, 2014. **Exhibit C** – J. Christos Dep., p. 327, ll. 19-25.

9.     Plaintiff began reporting to Ms. Tyler Farley at the beginning of 2015. **Exhibit C** – J. Christos Dep., p. 92, ll. 12-19.

10.    When Ms. Worth learned that Plaintiff was pregnant in early 2015, she informed Plaintiff of her rights under the FMLA and that she was entitled to leave. Ms. Worth indicated that as Plaintiff's delivery date approached, there would be paperwork Plaintiff and Ms. Worth would need to complete, both internally and externally. Plaintiff advised Ms. Worth that if she did take FMLA leave, she would use all twelve (12) weeks. **Exhibit A** – L. Worth Dep., p. 82, ll. 2-17; p. 97, ll. 5-9.

4850-0648-7878.4

11.     Shortly before Ms. Worth would have customarily provided Plaintiff with her final FMLA related paperwork Mr. Hart alerted her that multiple departments were going to be impacted by a companywide layoff due to the Company's financial related issues.  **Exhibit A** – L. Worth Dep., p. 87, l. 21 - p. 88, l. 11.

12.     The Company had experienced steady year-over-year growth and success until 2014, when the oil and gas industry took a downturn and work started to slow down.  **Exhibit E** – T. Hutchinson Dep., p. 100, l. 17 - p. 101, l. 3; **Exhibit B** – M. Halker Dep., p. 88, l. 23 - p. 89, l. 7.

13.     The Company was significantly impacted by the global downturn in the oil and gas industry.  **Exhibit B** – M. Halker Dep., p. 24, ll. 12-24; **Exhibit F** – D. Hart Dep., p. 81, l. 8 - p. 82, l. 19.

14.     Towards the end of 2014, as the economy began to dip, the Company began considering laying people off.  **Exhibit B** – M. Halker Dep., p. 87, l. 6 - p. 88, l. 19; **Exhibit G** – T. Farley Dep., p. 121, ll. 3-8; **Exhibit F** – D. Hart Dep., p. 83, l. 13 - p. 85, ll. 12.

15.     The Company was forced to consider mass companywide layoffs based on its struggling financial performance in 2015.  **Exhibit E** – T. Hutchinson Dep., p. 107, ll. 6-25.

16.     Financial targets were identified by David Hart, Halker's former Chief Financial Officer. **Exhibit E** – T. Hutchinson Dep., p. 106, ll. 20-24.

17.     Those targets were conveyed to the various department managers who ultimately recommended those selected individuals for layoff.  **Exhibit E** – T. Hutchinson Dep., p. 107, ll. 6-25.

18.     In Plaintiff's case, her supervisor, Tyler Farley, ranked the project managers in her department, along with input from her high level reports, Craig Melton, Greg Campbell and Brianne Stebbins.  **Exhibit E** – T. Hutchinson Dep., p. 108, l. 18 – p. 109, l. 9.

19.     Ultimately, it was Ms. Farley who made the decision to include Plaintiff in the May 2015 layoff.  **Exhibit E** – T. Hutchinson Dep., p. 109, ll. 14-17.

20.     In evaluating and deciding which employees to lay-off within Ms. Christos' department, Tyler Farley, along with the program managers, used a comprehensive rating matrix and every employee within the department was graded.  **Exhibit G** – T. Farley Dep., p. 13, l. 13 - p. 14, l. 15; p. 45, ll. 15-20; p. 46, ll. 1-4; p. 64, l. 20 - p. 65, l. 7; **Exhibit I** – Rating Matrix.

21.     Plaintiff and Mike Molter (a Caucasian male) had the two lowest scores on the matrix. **Exhibit C** – J. Christos Dep., p. 165, l. 14 - p. 166, l. 18; **Exhibit G** – T. Farley Dep., p. 101, ll. 11-17; **Exhibit I** – Rating Matrix.

22.     Ms. Worth looked into whether Plaintiff's anticipated maternity leave meant that Plaintiff had to be excluded from consideration to be part of a layoff.  **Exhibit A** – L. Worth Dep., p. 86, l. 19 – p. 87, l. 1.

23.     Ms. Worth learned that Plaintiff's anticipated maternity leave did not exclude her from layoff consideration.  **Exhibit A** – L. Worth Dep., p. 86, ll. 12-18.

24.     Ms. Worth informed Ms. Farley of this information.  **Exhibit A** – L. Worth Dep., p. 86, l. 19 – p. 87, l. 1; p. 87, ll. 18-20.

25.     Plaintiff was part of a companywide layoff that occurred on May 1, 2015.  **Exhibit C** – J. Christos Dep., p. 33, ll. 2-6.

26. The decision to terminate Plaintiff's employment, had everything to do with the economy, the lack of work, rating matrix score, as expressed by Ms. Farley to Plaintiff. **Exhibit G** – T. Farley Dep., p. 101, ll. 11-17.

## III. ARGUMENT

**A. The Company is entitled to Summary Judgment on Plaintiff's First Claim: "Sex and Pregnancy Discrimination in violation of Title VII of the Civil Rights Act of 1964 and the Pregnancy Discrimination Act of 1978 by [the Company]" (the "Discrimination Claim")**

*1. Governing Law*

For her Discrimination Claim, Plaintiff bears the burden of proving a prima facie case. *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (citations omitted). "A plaintiff proves a violation of Title VII either by direct evidence of discrimination or by following the burden-shifting framework of *McDonnell Douglas Corp. v. Green*. . . ." *Khalik*, 671 F.3d at 1192 (citation omitted). Plaintiff has no direct evidence of discrimination by the Company, so the *McDonnell Douglas* framework accordingly applies.[1]

*McDonnell Douglas* involves a familiar three-step analysis. First, Plaintiff must "set forth a prima facie case of discrimination [by establishing] that (1) she is a member of a protected class, (2) she suffered an adverse employment action, (3) she qualified for the position at issue, and (4) she was treated less favorably than others not in the protected class." *Khalik*,

---

[1] Since Plaintiff has no direct evidence of discrimination, Plaintiff cannot rely on a "mixed motives" approach to proceed on her Discrimination Claim. *See Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1226 (10th Cir. 2008) ("A mixed-motive case is not established, and the *Price Waterhouse* framework does not apply, until the plaintiff presents evidence that directly shows that retaliation played a motivating part in the employment decision at issue."); *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 998 (10th Cir. 2011) ("If the plaintiff cannot directly establish retaliation played a motivating part in the employment decision, she may instead rely on the

671 F.3d at 1192 (citation omitted). "The burden then shifts to the defendant to *produce* a legitimate, non-discriminatory reason for the adverse employment action." *Id.* (emphasis added) (citation omitted); *Goodwin v. Gen. Motors*, 275 F.3d 1005, 1012 (10th Cir. 2002) (employer's *McDonnell Douglas* burden at summary judgment is one of production, not persuasion).

The Company will assume, for purposes of this Motion only, that Plaintiff can make her prima facie showing to shift the *McDonnell Douglas* burden onto the Company.[2] The Company therefore skips addressing Plaintiff's prima facie elements and focuses instead on showing a legitimate, non-discriminatory reason for Plaintiff's layoff on the May 1, 2015.

2.   *The severe downturn in the oil and gas industry and Plaintiff's ratings matrix score used by Ms. Farley, Plaintiff's manager, to recommend Plaintiff for inclusion in the May 1, 2015 layoff are legitimate, non-discriminatory reasons*

The undisputed facts show that the Company laid Plaintiff off on May 1, 2015 for legitimate, non-discriminatory reasons. The Tenth Circuit has repeatedly characterized the Company's *McDonnell Douglas* burden as being "'exceedingly light.'" *Zamora v. Elite Logistics, Inc.*, 478 F.3d 1160, 1165 (10th Cir. 2007) (en banc) (quoting *Goodwin*, 275 F.3d at 1013). To satisfy this minimal burden, "'the defendant must merely *proffer* non-gender based reasons, not prove them.'" *Sprague v. Thorn Ams., Inc.*, 129 F.3d 1355, 1363 (10th Cir. 1997) (citation omitted).

Here, the Company easily satisfies this exceedingly light burden. It is beyond dispute that the severe downturn in the oil and gas industry in late 2014 and early 2015 caused a severe

---

three-part framework established in *McDonnell Douglas* . . ., to prove retaliation indirectly.") (citing *id.*).

[2] At the summary judgment stage, the Company is mindful of the Tenth Circuit's admonition that Plaintiff's prima facie burden is "slight." *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th

downturn for the Company. **Exhibit B** – M. Halker Dep., p. 24, ll. 12-24; **Exhibit F** – D. Hart Dep., p. 81, l. 8 - p. 82, l. 19. To try and survive, the Company had to cut its expenses, including payroll. **Exhibit B** – M. Halker Dep., p. 87, l. 6 - p. 88, l. 19; **Exhibit G** – T. Farley Dep., p. 121, ll. 3-8; **Exhibit F** – D. Hart Dep., p. 83, l. 13 - p. 85, ll. 17; **Exhibit E** – T. Hutchinson Dep., p. 107, ll. 6-25. These cuts included multiple rounds of layoffs, of which the May 1, 2015 layoff was one. **Exhibit F** – D. Hart Dep., p. 83, l. 13 - p. 85, ll. 12. The Company needed the Project Management Department, the department in which Plaintiff worked, to lay off PMs. **Exhibit E** – T. Hutchinson Dep., p. 107, ll. 6-25. Ms. Farley, the head of the Project Management Department, used the rating matrix to determine which two PMs she would recommend for layoff. **Exhibit G** – T. Farley Dep., p. 13, l. 13 - p. 14, l. 15; p. 45, ll. 15-20; p. 46, ll. 1-4; p. 64, l. 20 - p. 65, l. 7. Mike Molter, a Caucasian male, was the PM with the lowest weighted score. **Exhibit C –** J. Christos Dep., p. 165, l. 14 – p. 166, l. 18; **Exhibit I** – Rating Matrix. Plaintiff was the PM with the second lowest weighted score. **Exhibit C –** J. Christos Dep., p. 165, l. 14 – p. 166, l. 18; **Exhibit I** – Rating Matrix. Ms. Farley accordingly recommended Mr. Molter and Plaintiff for layoff on May 1, 2015. **Exhibit G** – T. Farley Dep., p. 101, ll. 11-17. The severe downturn in the oil and gas industry in late 2014 and early 2015 that dragged the Company down with it and Plaintiff's rating matrix score used by Ms. Farley to recommend Plaintiff (along with the lowest scoring PM, Mr. Molter) for layoff are legitimate, non-discriminatory reasons for Plaintiff's layoff on May 1, 2015. *Zamora*, 478 F.3d at 1165; *Flasher Co.*, 986 F.2d at 1317. Accordingly, the Company is entitled to judgment as a matter of law on Plaintiff's Discrimination Claim.

Cir. 2005). The Company will thus assume, for purposes of this Motion only, that Plaintiff can

**B.** **The Company is entitled to Summary Judgment on Plaintiff's Second Claim: "Retaliation in violation of the [sic] Title VII of the Civil Rights Act of 1964 by [the Company" (the "Retaliation Claim")**

*1.      Governing law*

For her Retaliation Claim, Plaintiff bears the burden of stating a prima facie case of retaliation. *Khalik*, 671 F.3d at 1192-93. As with Plaintiff's Discrimination Claim, in the absence of direct evidence "that retaliation played a motivating part in the employment decision," Plaintiff must rely "on the three-part *McDonnell Douglas* framework."[3]  *Id.* at 1192 (citing *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987 (10th Cir. 2011)). Under *McDonnell Douglas*, "[t]o state a prima facie case for retaliation under Title VII, [Plaintiff] must show '(1) that she engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action.'"  *Id.* at 1193 (quoting *Twigg*, 659 F.3d at 998). As explained below, Plaintiff cannot state a prima facie case for her Retaliation Claim.

Even if Plaintiff could state a prima facie retaliation case (which she cannot), under *McDonnell Douglas* the Company is entitled to judgment as a matter of law once it "offer[s] a legitimate, nonretaliatory reason for its decision."  *Twigg*, 659 F.3d at 998 (citing *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1212 (10th Cir. 2008)). As explained below, the Company had legitimate, nonretaliatory reasons for Plaintiff's layoff on May 1, 2015, and the Company is

---

make her prima facie showing, but it reserves the right to challenge this at trial.
[3] Since Plaintiff has no evidence "that directly shows that retaliation played a motivating part in the employment decision at issue," Plaintiff cannot rely on a "mixed motives" approach to proceed on her Retaliation claim.  *Fye*, 516 F.3d at 1226; *Twigg*, 659 F.3d at 998.

accordingly entitled to judgment as a matter of law on Plaintiff's Retaliation Claim for this reason too.

      2.    *Plaintiff cannot state a prima facie case because she cannot show but-for causation*

For purposes of this Motion only, the Company will assume that Plaintiff can satisfy her first Retaliation Claim prima facie element.[4]  For purposes of this Motion only, the Company will also assume that Plaintiff can satisfy the second prima facie element: that Plaintiff experienced a materially adverse employment action by being included in the May 1, 2015 layoff.  But Plaintiff's prima facie retaliation case falls down on the third element.

The Company is entitled to judgment as a matter of law on Plaintiff's Retaliation Claim because Plaintiff cannot show that any purported protected activity Plaintiff engaged in caused the Company to include her in the May 1, 2015 layoff.  To satisfy the third element of her prima facie case of retaliation, Plaintiff must "demonstrate that, but for her protected activity, she would not have faced the alleged adverse employment action."  *Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1269 (10th Cir. 2015) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2534 (2013)); *Ward v. Jewell*, 772 F.3d 1199, 1203 (10th Cir. 2014) (citing *Nassar*, 133 S.Ct. at 2533; *Byorick v. Cas, Inc.*, No. 14-cv-2200-WJM-KMT, 2016 WL 8469748, at *4 (D. Colo. July 18, 2016) ("The Supreme Court addressed this requirement in *Nassar*, holding that 'Title VII retaliation claims require proof that the desire to retaliate was the

---

[4] There is, at minimum, a factual dispute as to the first element of Plaintiff's prima facie retaliation case: whether Plaintiff engaged in protected opposition to purported discrimination. **Exhibit C** – J. Christos Dep., p. 61, l. 5 – p. 62, l. 12 (Plaintiff did not reference discrimination or retaliation in her "Formal Complaint").  Because Plaintiff indisputably lacks evidence to show the third element, causation, of her prima facie case, the Company will assume, for purposes of

but-for cause of the challenged employment action.'") (quoting 133 S.Ct. at 2528) (footnote omitted). "The evidence of but-for causation 'must be based on more than mere speculation, conjecture, or surmise.'" *Ward*, 772 F.3d at 1203 (quoting *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004)); *Byorick*, 2016 WL 8469748, at *4 (quoting *id.*).

Plaintiff has no evidence showing that *but for* any purported protected activity she engaged in that she would not have been included in the May 1, 2015 layoff. Indeed, Plaintiff has no evidence that Ms. Farley, the manager of Plaintiff's department and the person who recommended that Plaintiff be included in the layoff, had any idea that Plaintiff purportedly engaged in any protected activity. Plaintiff simply cannot, as a matter of well-established law, show but-for causation for her Retaliation Claim without evidence that Ms. Farley knew that Plaintiff purportedly engaged in protected activity. *Byorick*, 2016 WL 8469748, at *5 ("[I]t is well established in the Tenth Circuit that to establish causation in a retaliation claim, the plaintiff 'must show that the individuals who took adverse action against [her] knew of [her] protected opposition.") (citations omitted). Accordingly, the Company is entitled to judgment as a matter of law on Plaintiff's Retaliation Claim.

### 3.    Plaintiff was laid off on May 1, 2015 for legitimate, non-discriminatory reasons

The undisputed facts show that the Company laid Plaintiff off on May 1, 2015 for legitimate, non-discriminatory reasons. As with Plaintiff's Discrimination Claim, the Company's burden at this step of *McDonnell Douglas* is minimal. *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1195 (10th Cir. 2011) (citations omitted) (the same *McDonnell Douglas* framework applies to both discrimination and retaliation claims); *see also Zamora*, 478 F.3d at

---

this Motion only, that Plaintiff can make her showing on the first prima facie element of her

1165 (10th Cir. 2007) (quoting *Goodwin*, 275 F.3d at 1013). Satisfying this exceedingly light burden requires that the Company merely proffer a "legitimate, non-discriminatory or non-retaliatory rationale for the adverse employment action." *Crowe*, 649 F.3d at 1195; *Sprague*, 129 F.3d at 1363 (citation omitted).

For the legitimate, non-discriminatory reasons explained above regarding Plaintiff's Discrimination Claim, the Company has easily satisfied its *McDonnell Douglas* burden as to Plaintiff's Retaliation Claim. Accordingly, even assuming that Plaintiff could state a prima facie retaliation case (which she cannot), the Company is entitled to judgment as a matter of law on Plaintiff's Retaliation Claim.

**C.     The Company is entitled to Summary Judgment on Plaintiff's Third Claim: "Family and Medical Leave Act Interference by [the Company]" (the "FMLA Interference Claim")**

*1.     Governing law*

In order to state a prima facie case for her FMLA Interference Claim, Plaintiff must show "'(1) that [she] was entitled to FMLA leave, (2) that some adverse action by the employer interfered with [her] right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of [her] FMLA rights." *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1180 (10th Cir. 2006) (quoting *Jones v. Denver Pub. Sch.*, 427 F.3d 1315, 1319 (10th Cir. 2005)). Even if Plaintiff states a prima facie case (which, as explained below, she cannot), the Company is entitled to judgment as a matter of law upon showing that Plaintiff would have been laid off regardless of Plaintiff's request for FMLA leave. *Id.* (citing *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 961, 963 (10th Cir. 2002))

---

Retaliation Claim. The Company, however, reserves the right to challenge this element at trial.

## 2. *Plaintiff cannot show the causation element of her prima facie case*

As with Plaintiff's Retaliation Claim, Plaintiff cannot state a prima facie case for her FMLA Interference Claim because she has no evidence of causation.[5]  To satisfy this third prima facie element, Plaintiff must present "evidence that there is a causal connection between her [layoff] and her exercise of FMLA rights[.]"  *Id.* at 1181.  But Plaintiff has no such evidence.  Moreover, Plaintiff did not allege in her Complaint that she was included in the May 1, 2015 layoff *because* she informed the Company of her anticipated maternity leave.  Complaint, ¶¶ 62-68.  Instead, Plaintiff limited her allegations of FMLA interference to the Company's purported failure to provide Plaintiff with information regarding FMLA.  *Id.*, ¶ 66 (The Company "participated in unlawful employment practices and policies in violation of the [FMLA] by failing to provide [Plaintiff] information on FMLA, therefore interfering with her ability to take FMLA leave.").  Without any evidence that Plaintiff was included in the May 1, 2015 layoff *because* of her anticipated maternity leave, Plaintiff cannot satisfy the causation element.  *Metzler*, 464 F.3d at 1181 ("Fatally, however, in her deposition Metzler could not state her FMLA leave as the reason FHLB assigned new duties to her. This concession breaks Metzler's alleged causal chain. Accordingly, 'any reason for terminating her employment would not involve FMLA, and consequently that statute can offer her no relief' on her interference claim.") (quoting *Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1262 (10th Cir. 1998)).  Accordingly, the Company is entitled to judgment as a matter of law on Plaintiff's FMLA Interference Claim.

---

[5] The Company will assume, for purposes of this Motion only, that Plaintiff can show the first two prima facie elements of her FMLA Interference Claim.  The Company, however, reserves the right to challenge these elements at trial.

3. *Plaintiff would have been included in the May 1, 2015 layoff regardless of her anticipated maternity leave*

Even assuming that Plaintiff could state a prima facie case for her FMLA Interference Claim (which she cannot), the Company is still entitled to judgment as a matter of law because Plaintiff would have been included in the May 1, 2015 layoff regardless of her anticipated maternity leave. *Metzler*, 464 F.3d at 1180; *Gunnell*, 152 F.3d at 1261 ("an employee who requests FMLA leave [has] no greater protection against his or her employment being terminated for reasons not related to his or her FMLA request than he or she did before submitting the request") (citations omitted). Lauren Worth, the Company's human resources manager, looked into whether Plaintiff's anticipated maternity leave meant that Plaintiff had to be excluded from consideration to be part of a layoff. **Exhibit A** – L. Worth Dep., p. 86, l. 19 – p. 87, l. 1. Ms. Worth learned that Plaintiff's anticipated maternity leave did not exclude her from such consideration. *Id.*, p. 86, ll. 12-18. And Ms. Worth informed Ms. Farley of this. *Id.*, p. 86, l. 19 – p. 87, l. 1; p. 87, ll. 18-20. The Company thus considered whether Plaintiff's maternity leave precluded her from being included in the May 1, 2015 layoff and determined that it did not. The undisputed evidence therefore shows that the Company included Plaintiff in the May 1, 2015 layoff regardless of her anticipated maternity leave, and the Company is accordingly entitled to judgment as a matter of law on Plaintiff's FMLA Interference Claim. *Metzler*, 464 F.3d at 1180; *Gunnell*, 152 F.3d at 1262.

**D.     The Company is entitled to Summary Judgment on Plaintiff's Fourth Claim: "Intentional Interference with Contract by Defendants [Messrs.] Halker and Hutchinson" (the "Tortious Interference Claim")**

1. *Governing law*

Under Colorado law, '[t]o state a claim for intentional interference with a contractual

16

relationship, a plaintiff must establish 1) the existence of a valid contract between the plaintiff and a third party; 2) knowledge by the defendant of this contract; 3) intent by the defendant to induce a breach of this contract by the third party; 4) action by the defendant which induces a breach of the contract; and 5) damage to the plaintiff." *Deuty v. HP (Hewlett-Packard)*, No. 10-cv-00562-WYD-KMT, 2011 WL 2607169, at *15 (D. Colo. May 23, 2011), *adopted by* 2011 WL 2607159 (D. Colo. July 1, 2011) (citing *Comtrol, Inc. v. Mountain States Tel. & Tel. Co.*, 513 P.2d 1082, 1084 (Colo. App. 1973)); *Baldwin v. Key Equip. Fin., Inc.*, No. 05-CV-00502-MSK-BNB, 2006 WL 2016843, at *11 & n.15 (D. Colo. July 17, 2006) (citing *Memorial Gardens, Inc. v. Olympian Sales & Mgmt. Consultants, Inc.*, 690 P.2d 207, 210 (Colo. 1984)). "[A]t-will contracts are afforded lesser protection, as interference with an at-will contract deprives the parties of future expectations, not vested legal rights." *Baldwin*, 2006 WL 2016843, at *12 (citing *Memorial Gardens*, 690 P.2d at 211). Moreover, an agent of the employer cannot be liable for tortious interference with an employment contract "unless the agent was 'motivated solely by the desire to harm one of the contracting parties or to interfere in the contractual relations between the parties.'" *Deuty*, 2011 WL 2607169, at *15 (quoting *W.O. Brisben Co. v. Krystkowiak*, 66 P.3d 133, 137 (Colo. App. 2002)); *Rudd v. Burlington Coat Factory Warehouse of Colo., Inc.*, 388 F. Supp. 2d 1201, 1207 (D. Colo. 2005) ("An agent may be liable only if he acts not at all in service to the corporation's interests but instead is motivated solely out of animus toward one or both contracting parties.") (citing *W.O. Brisben*, 66 P.3d at 136).

2.    *Plaintiff misses the mark entirely on her Tortious Interference Claim*

Plaintiff cannot even leave the starting gate on her Tortious Interference Claim as she has no employment contract with the Company. Indeed, when asked point-blank in her deposition,

Plaintiff could not identify any employment contract she purportedly had with the Company. **Exhibit C** – J. Christos Dep., p. 293, ll. 20-22 ("Q: And more clearly, you didn't have a written employment contract? A: I don't know."); p. 295, l. 25 – p. 296, l. 4 ("Q: And you can't produce an employment contract, can you? A: I do not have an employment contract. I don't know about contracts. I'm not a contracts lawyer."). As the Company's Employee Handbook makes crystal clear, Plaintiff's employment with the Company was at-will. **Exhibit H –** Employee Handbook pp. 4, 31. Any purported interference by Messrs. Halker and Hutchinson (which, as explained below, is non-existent) with Plaintiff's at-will employment with the Company thus "cannot constitute a breach of the at-will contract sufficient to support a claim by the Plaintiff." *Baldwin*, 2006 WL 2016843, at *12 (citing *Electrolux Corp. v. Lawson*, 654 P.2d 340, 341 (Colo. App. 1982)). The Company is accordingly entitled to judgment as a matter of law on Plaintiff's Tortious Interference Claim.

The Company is also entitled to judgment as a matter of law on this claim because Plaintiff has absolutely no evidence that Messrs. Halker and Hutchinson, as agents of the Company, were "motivated solely by the desire to harm one of the contracting parties or to interfere in the contractual relations between the parties." *W.O. Brisben*, 66 P.3d at 137. As to Mr. Halker, the most Plaintiff could say during her deposition is that she believed Mr. Halker bore responsibility, as president of the Company, for Mr. Hutchinson's behavior. **Exhibit C** – J. Christos Dep., p. 302, l. 25 – p. 303, l. 9 ("Q: Okay. What did Mr. Halker do intentionally with malice towards you to interfere with that contract? A: He condoned [Mr. Hutchinson's] behavior of retaliation . . . and discrimination. Q: How do you know that? A: Because he's the owner of the company and has a responsibility for the people that work there."). Aside from a conclusory,

self-serving accusation that Mr. Hutchinson "discriminated and retaliated" against Plaintiff, Plaintiff failed to identify any actions that Mr. Hutchinson took to include her in the May 1, 2015 layoff. *Id.*, p. 298, ll. 5 -8 ("A: I think that Mr. Halker condoned [Mr. Hutchinson's] behavior, which was that [Mr. Hutchinson] discriminated and retaliated against me. He condoned that behavior. And it's sad, because [Mr. Halker] is a great man.").

Moreover, the Company has offered ample evidence that Plaintiff was laid off on May 1, 2015 due to the severe downturn in the oil and gas industry and Plaintiff's rating matrix score, which was scored by Ms. Farley. These legitimate, non-discriminatory reasons are why Plaintiff was laid off from the Company – the only "breach" of her at-will employment relationship that Plaintiff has alleged; Plaintiff was not laid off on May 1, 2015 solely because of any purported animus toward Plaintiff harbored by Messrs. Halker or Hutchinson. *Rudd*, 388 F. Supp. 2d at 1207 (citing *W.O. Brisben*, 66 P.3d at 136). The Company is therefore entitled to judgment as a matter of law on Plaintiff's Tortious Interference Claim.

## IV.    CONCLUSION

For the foregoing reasons, Defendants Halker Consulting LLC, Matthew Halker, and Travis Hutchinson respectfully request that the Court enter summary judgment pursuant to Fed. R. Civ. P. 56 against Plaintiff on all of her claims in her Complaint and Jury Demand (Doc. No. 1) and grant Defendants such other and further relief that the Court deems just and proper.

4850-0648-7878.4

Respectfully submitted this 17th day of April, 2017.

KUTAK ROCK LLP


By:  *s/Brett M. Wendt*
     Brett M. Wendt
     Jeffrey H. McClelland
     1801 California Street, Suite 3000
     Denver, CO  80202
     Telephone:  (303) 292-7848
     Facsimile:  (303) 292-7799
     Email: *brett.wendt@kutakrock.com*
           *jeffrey.mcclelland@kutakrock.com*

ATTORNEYS FOR DEFENDANTS

4850-0648-7878.4

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 17th day of April, 2017, I electronically filed the foregoing **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court and served on the following CM/ECF participant(s) using the CM/ECF system :


Rachel E. Ellis
Ellis Employment Law, LLC
1725 High Street, Suite 3
Denver, Colorado 80218
rachel@ellisemploymentlaw.com

Attorney for Plaintiff


By:     *s/ Edna Slagle*
         Edna Slagle

4850-0648-7878.4