IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-01838-PAB-NYW

JENNIFER CHRISTOS,

Plaintiff,

v.

HALKER CONSULTING, LLC;
MATTHEW HALKER; and
TRAVIS HUTCHINSON,

Defendants.

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

COMES NOW Plaintiff Jennifer Christos, by and through her counsel of record, and submits the following Response to Defendants' Motion for Summary Judgment.

## I. INTRODUCTION

This case arises out of the unlawful termination of Plaintiff Jennifer Christos from Defendant Halker Consulting, LLC (the Company), in violation of Title VII of the Civil Rights Act of 1964, the Pregnancy Discrimination Act of 1978, the Family and Medical Leave Act ("FMLA"), and the improper interference with her employment by Defendant Matthew Halker and Defendant Travis Hutchinson in violation of state law.

The evidence provided by Ms. Christos could allow a reasonable jury to find that Defendants acted illegally with regard to sex discrimination, retaliation, interference with FMLA rights, and tortious interference with contract. In light of the disputed facts, a credibility

1

determination is required, and the Court is not permitted to make such a determination at the summary judgment stage. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (credibility determinations must be left for the jury); *Fogarty v. Gallegos*, 523 F.3d 1147, 1165–66 (10th Cir. 2008) (same); *Seamons v. Snow*, 206 F.3d 1021, 1026 (10th Cir. 2000) (same).

## II. RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Admitted.
2. Admitted.
3. Admitted.
4. Denied. Ms. Christos had no *written* employment contract with the Company.
5. Admitted.
6. Admitted in part and denied in part. That Ms. Christos first complained about being unfairly treated by her manager Phil Jimenez in August 2014 is denied. Ms. Christos had complained to Human Resources prior to August 2014. Exhibit 1, Christos Deposition Excerpts, 42:3-10. That Mr. Hutchinson conducted an investigation is denied. Mr. Hutchinson chose to ignore or dismiss Edward Lowry's findings. Exhibit 2, Hutchinson Deposition Excerpts, 120:12-22; Exhibit 3, Lowry Deposition Excerpts, 185:8-20. That Mr. Hart conducted his own investigation is denied. None of the record cited by Defendants supports this assertion. That Mr. Lowry fully investigated is admitted. That Ms. Worth participated in Mr. Lowry's investigation is admitted.
7. Admitted.
8. Admitted.

2

9. Admitted. Specifically, Ms. Christos began reporting to Ms. Farley on January 29, 2015. Exhibit 4, Key Documents, p. 1.

10. Denied. Ms. Worth never informed Ms. Christos of her rights under FMLA. Exhibit 1, 185:2-15; 187:16-188:5; 189:7-20; 286:25-287:4.

11. Admitted.

12. Denied. It was February or March 2015 when the Company decided to address headcount in response to industry downturn. Exhibit 5, Hart Deposition Excerpts, 81:8-82:19.

13. Admitted.

14. Admitted.

15. Admitted.

16. Admitted.

17. Admitted.

18. Admitted.

19. Denied. Ultimately, the decision with regard to who would be chosen for the May 1, 2015 layoffs was made by Mr. Hutchinson. Exhibit 6, Farley Deposition Excerpts, 92:16-93:2.

20. Denied as to comprehensive. Billability was not considered in this matrix. Exhibit 6, 115:15-25. Nothing concrete was considered for ranking in the "ability to bring in new work" category. Exhibit 6, 55:3-7.

21. Admitted.

22. Admitted.

23. Admitted.

24. Admitted.

25. Admitted.

26. This conclusory statement is denied.

### III. STATEMENT OF ADDITIONAL DISPUTED FACTS

27. Ms. Christos was eligible for FMLA. Exhibit 7, Worth Deposition Excerpts, 79:13-80:6.

28. Ms. Farley and Mr. Hutchinson decided together which projects were assigned to each Project Manager. Exhibit 6, 37:22-38:4.

29. As Ms. Christos's supervisors, Mr. Jimenez and Ms. Farley did not make decisions about her employment in a vacuum. Any decision about moving Project Managers among projects was rare, and happened at the direction of higher level management. Exhibit 6, 41:10-20.

30. On March 3, 2014, Ms. Christos got a raise, a bonus, and this praise: "Jen has quickly become a valued member of the E&I team and Halker in general by demonstrating her competence and enthusiasm." Exhibit 4, p. 2.

31. Mr. Lowry became the Company's Human Resources Manager on April 4, 2014. Exhibit 4, p. 3.

32. Effective June 23, 2014, Mr. Lowry was promoted from HR Manager to HR Director, and received a 24% raise. Exhibit 4, p. 4.

33. Mr. Jimenez told Mr. Lowry that he had a fear of dealing with professional woman. Exhibit 3, 78:11-79:2.

34. Mr. Lowry witnessed and reported an incident in a meeting where Mr. Jimenez cut Ms. Christos off and told her to sit down and take notes like a good woman would. Exhibit 3, 82:14-83:2.

4

35. Mr. Jimenez openly voiced his intent to target Ms. Christos for termination. Exhibit 3, 84:15-85:5.

36. Mr. Jimenez excluded Ms. Christos from communication and then demeaned her for not having the information that was communicated. Exhibit 3, 127:22-128:19.

37. Mr. Jimenez spoke to women in a disrespectful or rude way. Exhibit 3, 89:1-20.

38. Mr. Jimenez was unwilling to consider female candidates for jobs. Exhibit 3, 92:1-7

39. Even though Mr. Lowry relayed these concerns about Mr. Jimenez's discriminatory treatment, Mr. Hutchinson allowed Mr. Jimenez to treat Ms. Christos and other women poorly, to the point where one woman wanted to quit. Exhibit 3, 87:3-11.

40. Mr. Hutchinson refused to provide any written summary of his purported counseling of Mr. Jimenez, and then instructed Mr. Lowry to destroy any documentation of complaints made against Mr. Jimenez. Exhibit 4, p. 6, ¶8.

41. On August 28, 2014, Mr. Hutchinson asked Ms. Christos whether she really wanted to continue to work at Halker. Exhibit 3, 255:8-257:1.

42. On September 4, 2014, Mr. Halker questioned Ms. Christos's commitment to the Company. Exhibit 1, 88:4-9, Exhibit 4, p. 6, ¶10.

43. Ms. Christos was replaced by a less experienced male colleague on a successful project, over the client's objection. Exhibit 1, 132:6-133:8, Exhibit 4, p. 6, ¶10.

44. Following her removal from the successful project, Ms. Christos was given one of the Company's most difficult clients. Exhibit 1, 132:6-133:8.

45. Mr. Lowry was concerned that Mr. Jimenez, Mr. Hutchinson, and Mr. Halker were exhibiting a clear pattern of discrimination and retaliation against Ms. Christos, so he and

Ms. Worth went to David Hart to explain the Company's precarious legal position on September 12, 2014.  Exhibit 3, 259:5-260:25, Exhibit 4, p. 6, ¶12.

46. Mr. Hart responded by dismissing Ms. Christos as "emotional" and telling Mr. Lowry that he would get back to him on Monday, September 15, 2014.  Exhibit 3, 261:1-262:4.

47. On Monday, September 15, 2014, Mr. Halker asked Mr. Hutchinson and Mr. Hart what they had decided to "do" with Mr. Lowry.  Exhibit 4, p. 8.

48. On Tuesday, September 16, 2014, Mr. Lowry's employment was terminated because of his concerns that Ms. Christos was being subjected to discrimination and retaliation.  Exhibit 4, p. 7, ¶15.

49. Mr. Lowry immediately notified Mr. Hart that his termination was illegal retaliation and that he intended to pursue his legal remedies.  Exhibit 3, 262:15-264:8.

50. Ms. Christos was afraid to talk about her complaints of discrimination or retaliation after the Human Resources Director was terminated for bringing those complaints to upper management.  Exhibit 1, 325:18-25.

51. Two weeks later, on September 29, 2014, Ms. Christos was informed by Mr. Jimenez that she was receiving a promotion.  However, the promotion was kept secret: the Company made no mention of her promotion either internally or externally.  Exhibit 4, p. 9; Exhibit 1, 130:13-14.

52. The Company extended an offer of employment as a Project Manager to Dale Solstrom on November 25, 2014, with a start date of January 26, 2015.  Exhibit 4, pp. 10-11.

53. The Company terminated Mr. Jimenez's employment on December 3, 2014.  Exhibit 4, p. 12.

54. In January 2015, Ms. Christos told Ms. Farley and Ms. Worth that she was pregnant and her due date was in June.  Exhibit 4, p. 14, ¶15.

55. On February 6, 2015, Mr. Lowry and the Company reached a Confidential Settlement.  Exhibit 4, pp. 16-22.

56. Starting in February, Ms. Christos was instructed to start transitioning her work to other Project Managers in anticipation of her impending maternity leave, even though her anticipated leave was four months away.  Exhibit 1, 108:14-21.

57. One of Ms. Christos's largest projects, Newfield, was given to Mr. Solstrom in February 2015.  Exhibit 1, 103:9-104:3.

58. Newfield had been very happy with Ms. Christos's work as a Project Manager. Exhibit 3, 190:22-191:6.

59. In March, Ms. Christos learned that she was scheduled for a C-section on June 16.  She informed Ms. Worth of this, and told her specifically that she expected to continue working until June 12, 2015.  Exhibit 4, p. 14, ¶15.

60. No documentation about rights under the FMLA was ever given to Ms. Christos.  Exhibit 7, 83:16-18.

61. Ms. Farley was instructed by upper management to identify 10% of her department for a layoff that would take place on May 1, 2015.  Exhibit 6, 83:15-17.

62. Ms. Farley, collaboratively with Mr. Hutchinson, chose to eliminate more than 10% of the Project Managers and include Ms. Christos in the layoff because she "didn't have any work" and she had "a performance issue." Exhibit 6, 101:18-102:7.

63. The reason Ms. Christos didn't have any work in April 2015 was partially because it had been given to Dale Solstrom in anticipation of reaching full term in her pregnancy. Exhibit 1, 211:18-212:20; Exhibit 6, 67:4-21; 69:6-70:18.

64. There is no documentation that Ms. Christos had a performance issue. No Performance Improvement Plan for Ms. Christos was ever put in place because there was "no time" to do so in the five months that Ms. Farley supervised Ms. Christos. Exhibit 6, 103:7-25.

65. On April 21, 2015, Ms. Farley told Ms. Christos that there was no plan to give her any additional work. Exhibit 4, p. 14, ¶18.

66. Ms. Christos could have stayed employed, gone on maternity leave, and returned to her position if "she hadn't done all the stupid stuff at the end…" Ms. Christos going on unpaid maternity leave would have benefitted the Company. Exhibit 5, 95:17-24.

## IV. ARGUMENT

*A. Summary Judgment Standards*

Under Fed. R. Civ. P. 56, summary judgment is only appropriate if the pleadings, depositions, documents, and answers to the interrogatories, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). As the moving party, the burden is on Defendants to demonstrate the lack of a genuine issue of a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The record "must be viewed in the light most favorable" to plaintiff, resolving all ambiguities and drawing all reasonable inferences against defendant. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Although this Court must review all the evidence presented by both parties, "it must disregard all evidence favorable to the moving party that the

jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). In other words, this Court must give credence to all evidence favoring plaintiff, and disregard all evidence presented by defendant that is contradicted, impeached, or provided by an interested witness. *Id*.

Summary judgment is not appropriate for settling issues of intent or motive in employment discrimination actions. *Roemer v. Public Serv. Co*., 911 F. Supp. 464, 468 (D. Colo. 1996). Therefore, a judge should not conduct a "mini-trial" to determine the employer's true state of mind in response to a summary judgment motion. *Randle v. City of Aurora*, 69 F.3d 441, 453 (10th Cir. 1995). Rather, "[t]he ultimate factual determination of whether the employer's decision was motivated by intentional discrimination based upon protected class characteristics is for the trier of fact." *Elmore v. Capstan, Inc.*, 58 F.3d 525, 530 (10th Cir. 1995).

A plaintiff may also survive summary judgment by introducing affirmative evidence of a discriminatory motive. *Danville v. Reg'l Lab Corp*., 292 F.3d 1246, 1249-50 (10th Cir. 2002). The plaintiff does not have the burden of proving that a defendant's proffered reasons were false, or that a discriminatory factor was the "sole" motivating factor in the employment decision. *James v. Sears, Roebuck & Co., Inc.*, 21 F.3d 989, 992 (10th Cir. 1994). Instead, the employee must show by competent evidence that unlawful intent was a determining factor and that the decision violates the statute. *Colo. Civil Rights Comm'n v. Big O Tires, Inc*., 940 P.2d 397, (Colo. 1997). Additionally, at the *prima facie* stage of the *McDonnell Douglas* analysis, a plaintiff is only required to raise an inference of discrimination, not dispel the non-discriminatory reasons subsequently proffered by defendant. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973); *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1193 (10th Cir. 2000).

9

Summary judgment is particularly inappropriate in this case because the credibility of Defendants' allegedly legitimate business reasons for terminating Ms. Christos's employment is very much at issue. Defendants simply ignore a vast amount of evidence supporting Ms. Christos's claims and ignore all inferences that can be drawn from such evidence.

### B. A Reasonable Jury Could Find Defendant Halker Consulting, LLC Discriminated Against Plaintiff Due to Her Sex and Pregnancy

For the purpose of this Motion, Defendants concede that Ms. Christos can establish a *prima facie* case for her claim of discrimination, and focus entirely on the allegedly legitimate non-discriminatory reason for her termination. All discussion of the final step of the *McDonnell Douglas* burden-shifting analysis, wherein it is the Ms. Christos's burden to prove that Defendants' proffered explanation is pretextual, is omitted from Defendant's Motion.

Circumstantial evidence has long been recognized as probative of intentional discrimination, and one way to prove pretext is where Defendants' explanation is "unworthy of belief." *See Reeves*, 530 U.S. at 147. "Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." *Rogers v. Mo. Pac. R.R. Co.*, 352 U.S. 500, 508, n. 17 (1957).

The types of pretextual evidence which courts consider to be probative is well-settled, and includes weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered justification for the challenged employment action. *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997); *Tomsic v. State Farm Mut. Auto. Ins. Co.*, 85 F.3d 1472, 1478-79 (10th Cir. 1996) (employer's inconsistent statements about the most important factor in the challenged employment decision was sufficient evidence of pretext). A plaintiff may establish pretext by showing by substantial evidence that the employer's proffered reason for

acting adversely towards him or her is unworthy of belief and that the termination was motivated, at least in part, by illegal discrimination. *See Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995). Prior treatment of the plaintiff is also relevant. *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1217 (10th Cir. 2002).

Here, the inclusion of Ms. Christos in the layoff of May 1, 2015, is suspect for several reasons, and taken in the light most favorable to her, a reasonable jury could infer that Defendants' reasoning is an attempt to disguise discrimination. Statement of Undisputed Material Facts (SUMF) #6, Statement of Additional Disputed Facts (SADF) #29, 33-46.

### C. A Reasonable Jury Could Find Defendant Halker Consulting, LLC Retaliated Against Plaintiff

Again, for the purpose of this Motion, Defendants partially concede Ms. Christos's burden and only dispute the third element of her *prima facie* case for retaliation: causation between her protected activity and materially adverse action from the Company. Evidence that retaliation occurred may be direct or circumstantial. At a minimum, a plaintiff must show that the individual who took adverse action against the plaintiff knew of the protected activity. *Williams v. Rice*, 983 F.2d 177, 181 (10th Cir. 1993).

It is conceivable that the Company would not have asked her if she even wanted to be part of the company, questioned her commitment to the company, removed Ms. Christos from a successful project, given her a difficult client to manage, transferred her work to another Project Manager four months in advance of her anticipated maternity leave, and included her in the May 1, 2015, layoff if she had not initially complained about discriminatory treatment. SADF #41-44, 56; SUMF 25, 6. Prior to her complaints, she was viewed as a valuable employee. SADF #30. Shortly after she complained, her responsibilities were altered, and she was set up to fail.

SUMF #6; SADF #43-44. The Human Resources Director, after conducting an investigation, believed that Mr. Halker and Mr. Hutchinson were discriminating and retaliating against Ms. Christos. SADF #45. The timing of Ms. Christos's secret promotion in conjunction with the termination of the Human Resources Director for advocating on her behalf, and the immediate removal of her responsibilities following the settlement of his retaliation claim against the Company supports an inference of retaliation. SADF #48, 50. Each of these decisions negatively impacting her employment were made in conjunction with upper management, including Mr. Halker and Mr. Hutchinson. SADF #28-29, 62.

> D. *A Reasonable Jury Could Find That Defendant Halker Consulting, LLC Interfered With Plaintiff's Rights Under The FMLA*

Within five days of an employer learning that an employee's leave may be for an FMLA-qualifying reason, the employer must notify the employee of the employee's eligibility for FMLA leave. 29 C.F.R. § 825.300(b). The eligibility notice, which may be oral or in writing, must state whether an employee is eligible for FMLA and, if not, the notice must identify at least one reason the employee is not eligible. *Id.* It is an employer's responsibility to designate, if appropriate, an employee's leave as qualifying under the FMLA, and to give notice of the designation to the employee. *Id.* Failure to provide the required notices may constitute interference with FMLA rights, which may subject an employer to liability for the employee's lost compensation and benefits, other monetary relief, equitable relief, or other relief tailored to the harm suffered. *Id.*

To prove FMLA interference under 29 U.S.C. § 2615(a)(1), a plaintiff must show: (i) she was eligible to take FMLA leave; (ii) that an adverse action by her employer interfered with her ability to take that leave; and (iii) that the employer's action was related to the exercise or

attempted exercise of the employee's FMLA rights. *Id*.; *Jones v. Denver Pub. Schs.*, 427 F.3d 1315, 1318-19 (10th Cir. 2005). The timing has significant probative force. *Smith v. Diffee Ford-Lincoln-Mercury, Inc*., 298 F.3d 995, 961 (10th Cir. 2002).

An FMLA interference claim is unlike a retaliation claim, in that the employer's motivation is irrelevant in the interference context. *See Metzler v. Fed Home Loan Bank of Topeka, 464 F.3d* 1164 (10th Cir. 2006); *see also Mellen v. Trustees of Boston Univ*., 504 F.3d 21, 26 (1st Cir. 2007). Typically then, an interference claim arises when an employer takes an adverse employment action against an employee before the employee is allowed to take FMLA leave, while the employee is on leave, or in a way that effectively prevents the employee from resuming work after returning from leave. *Preeson v. Parkview Med. Ctr., Inc.,* Case No. 15-cv-02263-MSK-KMT (D. Colo. Mar. 30, 2017); *Randazzo v. CH2M Hill, Inc*., Case. No. 13-cv-03276-MSK-KLM, *6 (D. Colo. Sept. 22, 2014).

Under this theory, a denial, interference, or restraint of FMLA rights is a violation regardless of the employer's intent, *Bones v. Honeywell Int'l, Inc.,* 366 F.3d 869, 877 (10th Cir.2004) (citing *Smith,* 298 F.3d at 960), and the *McDonnell Douglas* burden-shifting analysis does *not* apply to interference claims, *Smith* 298 F.3d at 963.

Ms. Christos was eligible for FMLA leave as an employee of the Company. SADF #27. The parties dispute whether Ms. Christos was ever informed of her rights under the FMLA, but agree that the Company failed to provide Ms. Christos with the requisite notice of her FMLA rights. SUMF #10, SADF #54, 59, 60. Ms. Christos never took FMLA leave from the Company, because she was terminated just before her leave would have begun. The termination of Ms. Christos's employment prior to taking maternity leave and exercising her right to FMLA

13

leave is clearly related to her anticipated leave: Ms. Farley states that Ms. Christos was included in the layoff partially because she didn't have any work. SADF #62. The reason Ms. Christos didn't have any work was because she was required to hand off her work to other Project Managers in anticipation of her upcoming maternity leave. SADF #63, 65.

> E. *A Reasonable Jury Could Find Defendant Matthew Halker and Defendant Travis Hutchinson Tortiously Interfered With Plaintiff's Employment*

Under Colorado law, "an agent who, while acting within the scope of official duties, causes his or her principal to breach a contract generally will not be held liable for tortious interference with that contract." *W.O. Brisben Cos., Inc. v. Krystkowiak*, 66 P.3d 133, 136 (Colo.App. 2002), aff'd, 90 P.3d 859 (Colo. 2004). The agent may be held liable, however, when she acts not even partly in service of the corporation's interests, but instead acts solely "out of personal animus towards one or both of the contracting parties." *Id.*; *see also Rudd v. Burlington Coat Factory Warehouse of Colo.*, Inc., 388 F.Supp.2d 1201, 1207 (D. Colo. 2005).

Defendants' Motion entirely fails to mention the controlling case law on this issue, and instead relies on an unpublished case. It is well established that an at-will contract is entitled to protection from tortious, unwarranted interference by outside parties. *Preston v. Atmel Corp.*, 560 F. Supp. 2d 1035, 1039 (D. Colo. 2008); *Ramirez v. GEO Group, Inc.*, 665 F. Supp. 2d 1170 (D. Colo. 2009). This protection extends to implied at-will contracts. *Ramirez*, 655 F. Supp. 2d at 1190 (an employment contract existed based on the plaintiff's and employer's relationship). No written contract is required. *Id.*

A plaintiff may prevail on the claim if she establishes five elements: (1) the existence of a valid contract between the plaintiff and a third party; (2) defendant knew or reasonably should have known of the contract; (3) defendant by words, conduct or both intentionally caused or

14

interfered to cause the third party not to perform or to terminate the contract with plaintiff; (4) defendant's interference with the contract was improper; and (5) defendant's interference caused damages to plaintiff. *Id*.

Here, Ms. Christos meets each required element. As to the first and second elements, there is no dispute that her employment relationship with the Company was known to both individual Defendants. Mr. Halker and Mr. Hutchinson interfered with Ms. Christos's employment by participating in and condoning discriminatory and retaliatory treatment, when they had the power to stop it. The interference was improper and caused Ms. Christos's damages. Malice may be inferred by the circumstantial evidence surrounding these employment decisions, i.e. ignoring her complaints, questioning her commitment to the Company, setting her up to fail, and terminating her employment at the first available point in time following the settlement of Mr. Lowry's claims. SUMF #6, SADF #39-46, 56-58, 62-66.

## V. CONCLUSION

For the foregoing reasons, Plaintiff Jennifer Christos respectfully requests that Defendants' Motion for Summary Judgment be denied.

Respectfully Submitted this 30th day of May, 2017.

                                          *s/ Rachel E. Ellis*
                                          Rachel E. Ellis
                                          Ellis Employment Law, LLC
                                          1725 High Street, Suite 3
                                          Denver, CO 80218
                                          Phone: (720) 465-6972
                                          rachel@ellisemploymentlaw.com

CERTIFICATE OF SERVICE

      I certify that on September 15, 2017, the foregoing Plaintiff's Response to Defendants' Motion for Summary Judgment was refiled with the CM/ECF electronic filing system, which will automatically notify Defendants by email as follows:

Brett M. Wendt
Brett.wendt@kutakrock.com

Jeffrey McClelland
Jeffrey.mccleland@kutakrock.com

                                            *s/ Hannah Hibbs*
                                            Hannah Hibbs