IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 16-cv-01838-PAB-NYW

JENNIFER CHRISTOS,

    Plaintiff,

v.

HALKER CONSULTING, LLC,
MATTHEW HALKER, and
TRAVIS HUTCHINSON,

    Defendants.
_____

# ORDER
_____

This matter is before the Court on Defendants' Motion for Summary Judgment [Docket No. 26]. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

## I. BACKGROUND[1]

This lawsuit arises out plaintiff Jennifer Christos' termination from Halker Consulting, LLC in May 2015. Plaintiff was hired by Halker Consulting, LLC (the "Company") on October 28, 2013 as an Electrical Engineer III. Docket No. 26 at 4, ¶ 2. Plaintiff was an at-will employee and had no written employment contract with the Company. *Id.*, ¶¶ 3-4; Docket No. 43 at 2, ¶¶ 3-4. On or about May 5, 2014, plaintiff began reporting to Phil Jimenez as her immediate supervisor. Docket No. 26 at 4, ¶ 5. Around this time, she also assumed the title of project manager. *Id.* at 4, ¶ 5. In

---

[1]The following facts are undisputed unless otherwise noted.

August 2014, plaintiff complained that she was being treated unfairly by Mr. Jimenez. *Id.* at 5, ¶ 6. She submitted a complaint to Travis Hutchinson, the Company's former Chief Operations Officer. *Id.*[2] Edward Lowry, the Company's former Human Resources Director, investigated the complaint. Docket No. 43 at 2, ¶ 6.[3] In September 2014, plaintiff was taken off one project and moved to a different project. Docket No. 43 at 5, ¶¶ 43-44; Docket No. 59 at 3, ¶¶ 43-44. The parties dispute whether plaintiff was replaced on the first project by a male colleague with lesser qualifications and whether the new project involved one of the Company's most difficult clients. Docket No. 43 at 5, ¶¶ 43-44; Docket No. 59 at 3, ¶¶ 43-44. Plaintiff did not submit any further complaints about discriminatory treatment after September 2014. Docket No. 26 at 5, ¶ 7. Mr. Jimenez was terminated on December 3, 2014. *Id.*, ¶ 8.

On January 29, 2015, plaintiff began reporting to a new manager, Tyler Farley. *Id.* at 5, ¶ 9; Docket No. 43 at 3, ¶ 9. That same month, Dale Sostrom began working for the Company as a project manager. Docket No. 43 at 6, ¶ 52. At some point in early 2015, Lauren Worth, the Company's former Human Resources Manager, learned that plaintiff was pregnant. Docket No. 26 at 5, ¶ 10.[4] Plaintiff's due date was in mid-

---

[2] Plaintiff asserts that she complained to Human Resources about Mr. Jimenez prior to August 2014. Docket No. 43 at 2, ¶ 6.

[3] Plaintiff disputes defendants' assertion that Mr. Hutchinson and Mr. Hart also investigated the complaint. Docket No. 43 at 2, ¶ 6.

[4] The parties dispute whether Ms. Worth informed plaintiff of her FMLA rights at that time. Docket No. 43 at 3, ¶ 10.

June. Docket No. 43 at 7, ¶ 59.[5] In February 2015, plaintiff was instructed to begin transitioning her work to other project managers. Docket No. 43 at 7, ¶ 56. The parties dispute whether the decision to have plaintiff transition her work was made in preparation for plaintiff's upcoming maternity leave or as a response to plaintiff's difficulties managing her workload. *Id.*; Docket No. 59 at 4, ¶ 56.

In late 2014 or early 2015, the oil and gas industry experienced an economic downturn that forced the Company's management to consider layoffs. Docket No. 26 at 6, ¶¶ 12-15. David Hart, the Company's former Chief Financial Officer, identified targets for the number of employees to be included in the layoffs. *Id.*, ¶ 16. Those targets were conveyed to the department managers, who were responsible for recommending employees for termination. *Id.*, ¶ 17. Ms. Farley, together with subsupervisors Craig Melton, Greg Campbell, and Brianne Stebbins, used a rating matrix to rank the project managers in her department. *Id.* at 7, ¶¶ 18, 20; Docket No. 27-7 at 6, 106:6-9.[6] Plaintiff and Mike Molter received the two lowest scores on the matrix. Docket No. 26 at 7, ¶ 21. On May 1, 2015, plaintiff was included in a companywide layoff. *Id.*, ¶ 25.

Plaintiff filed her complaint on July 19, 2016. Docket No. 1. Plaintiff asserts three claims against the Company: (1) sex and pregnancy discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended by the

---

[5]Defendants deny that plaintiff informed Ms. Worth that she had a Cesarean section scheduled for mid-June but do not otherwise dispute that plaintiff was due in June. Docket No. 59 at 4, ¶ 59.

[6]Plaintiff denies that this was a "comprehensive" rating matrix because it did not account for an employee's "billability." Docket No. 43 at 3, ¶ 20.

Pregnancy Discrimination Act of 1978; (2) retaliation under Title VII; and (3) interference with her rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*. *Id.* at 6-9. Plaintiff also asserts a claim against Mr. Hutchinson and Matthew Halker, the owner of the Company, for intentional interference with contract under Colorado law. *Id.* at 9; *see also* Docket No. 27-5 at 4, 302:25-303:8 (stating that Mr. Halker was "the owner of the company"). On April 17, 2017, defendants moved for summary judgment on all claims. Docket No. 26.

## II. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc*., 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."

4

*Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (internal quotation marks omitted) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115. When considering a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

## III. ANALYSIS

### A. Title VII Discrimination

Plaintiff asserts a claim against the Company for sex and pregnancy discrimination under Title VII. Title VII makes it unlawful "for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Under the Pregnancy Discrimination Act, "Title VII's prohibition against sex discrimination applies to discrimination based on pregnancy." *Young v. United Parcel Serv. Inc.*, 135 S. Ct. 1338, 1343 (2015).

5

Plaintiff does not provide any direct evidence that she was discriminated against on account of her sex. Accordingly, she must rely on the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 793 (1973), to prove discriminatory animus. *See Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (a plaintiff can prove discrimination "by relying on the three-part *McDonnell Douglas* framework") (internal quotation marks omitted). Under that framework, plaintiff bears the initial burden of establishing a prima facie case of discrimination. *Id.* This requires plaintiff to show three elements: (1) that she belonged to a protected class; (2) that she suffered an adverse employment action; and (3) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Luster v. Vilsack*, 667 F.3d 1089, 1095 (10th Cir. 2011).[7] If plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant to state a legitimate, nondiscriminatory reason for its adverse employment action. *Sandoval v. City of Boulder, Colo.*, 388 F.3d 1312, 1321 (10th Cir. 2004). If defendant produces a legitimate reason, then the court must grant defendant summary judgment unless

---

[7]The Tenth Circuit has noted that the prima facie case is sometimes articulated differently depending on the specific claim before the court. *See id.* at 1095 n.1; *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1307 (10th Cir. 2005). In discriminatory termination cases, the prima facie case is often broken into four elements. *See, e.g.*, *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1150 (10th Cir. 2008) ("Generally stated, a prima facie case of discriminatory discharge under Title VII requires plaintiff to demonstrate that she (1) belongs to a protected class; (2) was qualified for her position; (3) was discharged; and (4) her position was not eliminated after her discharge."). No matter the precise formulation, "[t]he critical prima facie inquiry in all cases is whether the plaintiff has demonstrated that the adverse employment action occurred 'under circumstances which give rise to an inference of unlawful discrimination.'" *Id.* at 1151 (quoting *Plotke v. White*, 405 F.3d 1092, 1100 (10th Cir. 2005).

plaintiff can show a genuine issue of material fact as to whether the stated reason for the adverse action is pretextual. *Id.*

"Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Lobato v. N.M. Environmental Dep't*, 733 F.3d 1283, 1289 (10th Cir. 2013) (internal quotation marks omitted). In determining whether evidence of pretext exists, the court must "examine the facts as they appear to the person making the decision, not the plaintiff's subjective evaluation of the situation." *Id.* (internal quotation marks and brackets omitted). The pertinent inquiry is whether the employer "honestly believed [the reasons for its decision] and acted in good faith upon those beliefs." *Id.* (internal quotation marks omitted).

The Company concedes, for purposes of summary judgment, that plaintiff has established a prima facie case of discrimination. Docket No. 26 at 9. However, the Company asserts that it is entitled to summary judgment because it had two legitimate, non-discriminatory reasons to terminate plaintiff's employment: (1) the Company had to make personnel cuts in order to survive an economic downturn; and (2) plaintiff received the second lowest weighted score on the rating matrix used to determine which project managers would be included in the layoff. *Id.* at 9-10. Plaintiff does not dispute that defendants' stated reasons for the termination satisfy defendants' burden of showing legitimate and non-discriminatory grounds. *See* Docket No. 59 at 5; *see*

7

also *Zamora v. Elite Logistics, Inc.*, 478 F.3d 1160, 1165 (10th Cir. 2007) (noting employer's "exceedingly light" burden to provide legitimate, non-discriminatory reason for adverse employment action (internal quotation marks omitted)). Thus, the only question is whether plaintiff has proffered sufficient evidence to create a genuine dispute of fact as to whether those reasons were pretext for unlawful discrimination.

Plaintiff asserts that defendants' decision to include her in the May 1, 2015 layoff "is suspect for several reasons." Docket No. 43 at 11. Although plaintiff does not expressly identify those "reasons" in her brief, she cites to a number of facts set forth in the defendants' statement of undisputed facts and in her statement of additional disputed facts. Those facts include the following: (1) plaintiff complained about being unfairly treated by her manager, Phil Jimenez, in August 2014, Docket No. 26 at 5, ¶ 6; Docket No. 43 at 2, ¶ 6; (2) decisions to move project managers to different assignments were rare and made at the direction of higher level management, Docket No. 43 at 4, ¶ 29; (3) Mr. Jimenez exhibited a discriminatory attitude toward women, *id.* at 4-5, ¶¶ 33, 37, 38; (4) Mr. Jimenez discriminated against plaintiff, treated her in a demeaning way, and "openly voiced his intent to target [her] for termination," *id.*, ¶¶ 34, 35, 36; (5) Mr. Hutchinson allowed Mr. Jimenez to continue mistreating female employees, despite concerns raised by Edward Lowry, *id.* at 5, ¶ 39; (6) Mr. Hutchinson refused to disclose a written summary of his counseling of Mr. Jimenez and instructed Mr. Lowry to destroy any documentation of complaints made against Mr. Jimenez, *id.*, ¶ 40; (7) in August and September of 2014, Mr. Halker questioned plaintiff's commitment to the company and Mr. Hutchinson asked whether she wanted to

8

continue working there, *id.*, ¶¶ 41-42; (8) plaintiff was replaced on a project by a less experienced male colleague and then assigned one of the company's most challenging clients, *id.*, ¶¶ 43-44; (9) on September 12, 2014, Mr. Lowry told David Hart that Mr. Jimenez, Mr. Hutchinson, and Mr. Halker's "clear pattern of discrimination and retaliation against [plaintiff]" had placed the company in a "precarious legal position," *id.* at 5-6, ¶ 45; and (10) Mr. Hart responded to Mr. Lowry's concerns by characterizing plaintiff as "emotional." *Id.*, ¶ 46.

When viewed in a light most favorable to plaintiff, the evidence plaintiff cites demonstrates that plaintiff was discriminated against by Mr. Jimenez on account of her sex in 2014 and that Mr. Hutchinson did not take appropriate steps to address the situation. The evidence does not, however, give rise to an inference that defendants' asserted justifications for including plaintiff in the May 1, 2015 layoff were pretextual.

The primary flaw in plaintiff's position is that she relies on a series of incidents that took place in the late summer and fall of 2014 without supplying any evidence to connect those incidents to her layoff on May 1, 2015. According to plaintiff's allegations, the primary perpetrator of the discrimination was her supervisor, Mr. Jimenez. However, Mr. Jimenez was terminated on December 3, 2014 – nearly six months before plaintiff's layoff. Docket No. 26 at 5, ¶ 8. Although plaintiff cites evidence showing that Mr. Hutchinson was complicit in – or at least indifferent to – the discrimination, there is no evidence that Mr. Hutchinson's attitudes played any role in plaintiff's layoff. Plaintiff claims that Mr. Hutchinson was ultimately responsible for the decision to include her in the May 1, 2015 layoff. Docket No. 43 at 3, ¶ 19. But in the deposition testimony plaintiff cites, Ms. Farley stated that, although Mr. Hutchinson

9

ultimately had to approve her decision about who to include in the layoff, he did not provide her with any input during the decision-making process. See Docket No. 44-6 at 8-9, 92:2-93:25; cf. *Lobato*, 733 F.3d at 1296 (finding that plaintiff could not establish liability under cat's paw theory of liability where employer did not rely on subordinate's biased version of the facts in making termination decision). Plaintiff cites no contrary evidence.

Plaintiff has not otherwise identified any inconsistencies, weaknesses, or contradictions in defendants' proffered justifications for her termination. Plaintiff admits that the Company was significantly affected by a downturn in the oil and gas industry in 2014 and was forced to lay people off as a result. Docket No. 26 at 6, ¶¶ 14-15. She further admits that her supervisor, Ms. Farley, used a rating matrix consisting of nine performance categories to determine which employees to recommend for the layoff. *Id.* at 7, ¶ 20. Plaintiff and Mike Molter received the two lowest scores on the matrix; both were recommended for the layoff. *Id.*, ¶ 21; Docket No. 27-4 at 4, 165:14-166:9. Plaintiff has not provided any evidence showing that Ms. Farley used the matrix in a discriminatory manner or that factors apart from plaintiff's low score played a role in her termination. Accordingly, she has failed to demonstrate that the Company's proffered reasons for her termination were pretextual. See *Annett v. University of Kansas*, 371 F.3d 1233, 1241 (10th Cir. 2004) (noting that burden at pretext stage "is more demanding and requires a plaintiff to assume the normal burden of any plaintiff to prove his or her case at trial" (internal quotation marks omitted)). The Company therefore entitled to summary judgment on plaintiff's discrimination claim.

## B. Title VII Retaliation

Title VII prohibits retaliation against individuals who oppose discriminatory employment practices in complaints or investigations of employment practices prohibited by Title VII. *See* 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, a plaintiff must prove three elements: "(1) protected employee action; (2) adverse action by an employer either after or contemporaneous with the employee's protected action; and (3) a causal connection between the employee's action and the employer's adverse action." *Jencks v. Modern Woodmen of Am.*, 479 F.3d 1261, 1264-65 (10th Cir. 2007). As with other discrimination claims under Title VII, if the plaintiff can establish a prima facie case, the defendant must then articulate a legitimate, nondiscriminatory or non-retaliatory reason to support its employment decision. *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1181 (10th Cir. 2006). At that point, the burden shifts back to the plaintiff to demonstrate that the defendant's legitimate reason is pretext. *Id.*

The Company argues that it is entitled to summary judgment on plaintiff's Title VII retaliation claim for two reasons: (1) plaintiff cannot show that she was included in the May 1, 2015 layoff as a result of engaging in protected activity; and (2) plaintiff cannot demonstrate that defendants' proffered reasons for including her in the layoff were pretextual. Docket No. 26 at 12-13.[8] In response, plaintiff contends it is "conceivable" that defendants would not have questioned her commitment to the

---

[8]Defendants assume, for purposes of the summary judgment motion, that plaintiff has established the first two elements of a prima facie case of discrimination. Docket No. 26 at 15.

11

company, removed her from a successful project, reduced her workload, and included her in the May 1 layoff had she not complained about discriminatory treatment. Docket No. 43 at 11. She also notes that she was "viewed as a valuable employee" prior to her complaints about discriminatory treatment, but that her responsibilities were subsequently altered and "she was set up to fail." *Id.*

The Court need not reach the issue of pretext. Plaintiff's retaliation claim fails as a matter of law because she has not pointed to any evidence establishing that Ms. Farley – or the supervisors who offered input on the employee rankings – knew about plaintiff's complaints of discriminatory treatment by Mr. Jimenez. *See Zokari v. Gates*, 561 F.3d 1076, 1081 (10th Cir. 2009) (stating that the causation element of a retaliation claim requires a plaintiff to "show that the individuals who took adverse action against him knew of his protected opposition"); *Byorick v. Cas., Inc.*, No. 14-cv-2200-WJM-KMT, 2016 WL 8469748, at *2, *5 (D. Colo. July 18, 2016) (granting summary judgment in favor of defendants on retaliation claim where manager responsible for recommending plaintiff's termination was not aware of plaintiff's complaints of discrimination). Moreover, she has failed to demonstrate that any of the managers who knew about her complaints of discrimination influenced Ms. Farley's decision to recommend plaintiff for the layoff. Another court in this district recently granted summary judgment in favor of an employer on a similar set of facts. In *Byorick*, the plaintiff asserted a claim for retaliatory discharge based on evidence that she was terminated approximately two months after filing a harassment complaint against her supervisor. 2016 WL 8469748, at *2, *5. Defendants moved for summary judgment on the ground that the plaintiff could not demonstrate causation because the person – Mr.

Whitehorne – who had recommended the plaintiff for termination did not have any knowledge of her discrimination complaints. *Id.* at *4. In an effort to avoid summary judgment, the plaintiff asserted that two management-level employees who knew about her complaints of discrimination – Mr. Weldele and Ms. Hagan – were involved in the decision to terminate her employment. *Id.* at *5. The court concluded that the argument failed for two reasons. First, the court determined that even if Mr. Weldele and Ms. Hagan were involved in the termination decision, there was no evidence that they took any action adverse to the plaintiff. *See id.* at *5-6. The evidence, viewed in a light most favorable to the plaintiff, only showed that Mr. Weldele and Ms. Hagan were responsible for formally approving the recommendation made by Mr. Whitehorne – an action the court characterized as "neutral." *Id.* at *6. Second, and relatedly, the court found that there was no evidence demonstrating that Mr. Weldele and Ms. Hagan had "provided substantive input contributing to Plaintiff's negative evaluation or the recommendation to eliminate her position." *Id.* On these bases, the court concluded there was no triable issue of fact as to causation and granted summary judgment in defendant's favor. *Id.* at *7.

This case is factually analogous to *Byorick*. Although it appears that Mr. Hutchinson, Mr. Hart, and Mr. Halker knew about plaintiff's discrimination complaints, *see* Docket No. 27-5 at 3, 298:5-8; Docket No. 27-6 at 6-7, 120:14-121:2; Docket No. 44-3 at 13, 185:3-20, the evidence, viewed in a light most favorable to plaintiff, demonstrates that it was Ms. Farley who decided to recommend plaintiff for the layoff. *See* Docket No. 26 at 7, ¶¶ 18-21. Plaintiff argues that Mr. Hutchinson was involved in

that decision, but the evidence she cites shows only that he was responsible for approving Ms. Farley's recommendations.  *See* Docket No. 44-6 at 8-9, 92:2-93:25.  Because Mr. Hutchinson did not offer input into Ms. Farley's decision-making process and his approval of her recommendation was only "neutral," *see Byorick*, 2016 WL 8469748, at *6, plaintiff has failed to demonstrate a triable issue of fact as to whether the desire to retaliate was the but-for cause of her termination.  *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013) (holding that "Title VII retaliation claims must be proved according to traditional principles of but-for causation").

### C.  FMLA Interference[9]

Defendants move for summary judgment on plaintiff's claim for FMLA interference.  Under the FMLA, eligible employees are entitled to "up to twelve weeks of unpaid leave . . . for serious health conditions and reinstatement to the former position or an equivalent one upon return from that leave."  *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1180 (10th Cir. 2006) (citing 29 U.S.C. §§ 2612(a)(1), 2614(a)).  An employer is prohibited from "interfer[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right provided" under the Act.  § 2615(a)(1).  To prevail on a claim for FMLA interference, a plaintiff must show "(1) that he or she was entitled to FMLA leave, (2) that some adverse action by the employer interfered with his or her right to take FMLA leave, and (3) that the employer's

---

[9]Courts have recognized that there is "no clear demarcation" between claims for FMLA interference under 29 U.S.C. § 2615(a)(1) and claims of discrimination under § 2615(a)(2).  *See Colburn v. Parker Hannifin/Nichols Portland Div.*, 429 F.3d 325, 330 (1st Cir. 2005).  However, the parties appear to agree that plaintiff's FMLA claim is one for FMLA interference rather than discrimination.  *See* Docket No. 26 at 14; Docket No. 43 at 12.

action was related to the exercise or attempted exercise of his FMLA rights." *Metzler*, 464 F.3d at 1180. Unlike other types of discrimination claims, "a denial, interference, or restraint of FMLA rights is a violation regardless of the employer's intent." *Id.* However, § 2615(a)(1) is "not a strict liability statute." *Id.* An employer may avoid liability by showing that the employee "would have been dismissed regardless of the employee's request for, or taking of, FMLA leave." *Id.*

Defendants admit that plaintiff was eligible for FMLA leave, Docket No. 43 at 4, ¶ 27, and concede, for purposes of summary judgment, that plaintiff has established the first two elements of her FMLA interference claim. *See* Docket No. 26 at 15 n.5. Defendants nevertheless argue that plaintiff's claim fails because (1) there is no causal connection between her layoff and the exercise of her FMLA rights, and (2) plaintiff would have been included in the layoff regardless of her maternity leave. *Id.* at 15-16.[10] In response, plaintiff argues that her termination was "clearly related to her anticipated leave" because plaintiff's lack of work at the time – which was the direct result of her

---

[10]Defendants also suggest that plaintiff limited her FMLA interference claim to "the Company's purported failure to provide [Plaintiff] information regarding FMLA." Docket No. 26 at 15. The Court disagrees. In the section of her complaint on FMLA interference, plaintiff alleges that "Defendant terminated [plaintiff's] employment in violation of the FMLA." Docket No. 1 at 9, ¶ 67. However, to the extent that plaintiff seeks to assert a standalone claim based on defendants' purported failure to provide information regarding her FMLA leave rights, that claim necessarily fails. Plaintiff cannot demonstrate that defendants' failure to provide such information impacted the exercise of her FMLA rights because her employment was terminated prior to the start of her FMLA leave. *See Bellone v. Southwick-Tolland Reg'l Sch. Dist.*, 748 F.3d 418, 422-23 (1st Cir. 2014) (finding that plaintiff could not prevail on claim for FMLA interference based on defendant's failure to provide timely notice of FMLA eligibility, where there was no evidence that plaintiff suffered any harm as a result of the lack of notice); *Steckmyer-Stapp v. PetSmart, Inc.*, No. 15-cv-00025-RM-STV, 2016 WL 6962874, at *5 (D. Colo. Nov. 29, 2016) (finding that mere "technical violation[s]" of FMLA notice requirements did not constitute unlawful interference with FMLA rights).

being required to transition her work to other project managers in anticipation of maternity leave – was cited by Ms. Farley as one of the reasons for including her in the layoff. *See* Docket No. 43 at 14.

The Court finds that there is a triable issue of fact as to whether plaintiff's termination was related to the exercise of her rights under the FMLA. First, the timing of plaintiff's termination – less than two months before the anticipated start of her leave period – gives rise to an inference of causation. *See Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 961 (10th Cir. 2002). Second, plaintiff has proffered evidence from which a reasonable jury could find that the transitioning of plaintiff's work to other project managers in anticipation of her maternity leave, *see, e.g.*, Docket No. 44-1 at 4-6, 14-15, 103:24-104:14, 211:18-212:20; Docket No. 44-6 at 4, 67:4-15, played a role in her dismissal. Ms. Farley indicated that one of the reasons she recommended plaintiff for the layoff was that she "didn't have any work." Docket No. 44-6 at 10-11, 101:8-102:7. This statement is consistent with Ms. Farley's use of the rating matrix to select employees for the layoff. The rating matrix included a category for "Quantity and Quality of Work," which was weighted more heavily than all but one of the other categories. *See* Docket No. 27-11 at 2. In both March and April of 2015, plaintiff was rated a three out of five in this category. *Id.* at 2, 5. Mr. Sostrom, the project manager who was assigned to take over plaintiff's projects while she was out on FMLA leave, received a score of five. *Id.* Given that plaintiff's score was less than two points lower then the next lowest score, *see id.*, there is a triable issue of fact as to

whether plaintiff's termination was related to her request for FMLA leave.[11]

Defendants' arguments to the contrary do not establish, as a matter of law, that plaintiff would have been dismissed regardless of the exercise of her FMLA rights. *See Smith*, 298 F.3d at 963 (holding that employer has burden of proving that employee would have been terminated regardless of request for FMLA leave). Defendants appear to contend that, because Ms. Worth, defendants' human resources manager, confirmed that "Plaintiff's anticipated maternity leave did not exclude her" from consideration for the May 1 layoff, it is undisputed that the Company included plaintiff in the layoff "regardless of her anticipated maternity leave." Docket No. 26 at 16. But the Company's assessment of its own potential liability has no bearing on whether plaintiff's termination was related to her FMLA leave or whether plaintiff would have been terminated even if she had not chosen to exercise her rights under the FMLA.

Because the Court finds that there is a genuine dispute of fact as to these issues, the Company is not entitled to summary judgment on plaintiff's FMLA interference claim.[12]

### D. Interference with Contract

Plaintiff asserts a claim against Mr. Hutchinson and Mr. Halker for intentional

---

[11]The Tenth Circuit has noted that "retaliation is not the only impermissible reason for dismissal" and that a plaintiff may prevail on an interference claim "if she was denied her substantive rights under the FMLA for a reason connected with her FMLA leave," provided that connection is not too indirect. *Smith*, 298 F.3d at 961.

[12]Plaintiff does not rely on defendants' response to her anticipated maternity leave to demonstrate pretext for purposes of her sex and pregnancy discrimination claim. *See* Docket No. 43 at 11 (citing Statement of Undisputed Material Facts ¶ 6, Statement of Additional Disputed Facts ¶¶ 29, 33-46).

interference with her employment contract.  *See* Docket No. 1 at 9-10.  To prevail on this claim, plaintiff must show: "(1) existence of a valid contract between plaintiff and a third party; (2) knowledge by the defendant of this contract . . . ; (3) intent by the defendant to induce a breach of contract by the third party; (4) action by the defendant which induces a breach of the contract; and (5) damage to the plaintiff."  *Comtrol, Inc. v. Mountain States Tel. & Tel. Co.*, 513 P.2d 1082, 1084 (Colo. App. 1973).  An agent of the third party can be held liable for tortious interference with the contract only if he or she was "motivated solely by the desire to harm one of the contracting parties or to interfere in the contractual relations between the parties."  *W.O. Brisben Co., Inc. v. Krystkowiak*, 66 P.3d 133, 137 (Colo. App. 2002).

Plaintiff bases her contractual interference claim on allegations that Mr. Halker and Mr. Hutchinson "participat[ed] in and condon[ed]" discrimination against her and "set[] her up to fail."  Docket No. 43 at 15.  Even if these allegations are true, however, plaintiff fails to demonstrate how the actions taken by Mr. Halker and Mr. Hutchinson resulted in her layoff on May 1, 2015.  Plaintiff cites evidence that she was moved between projects in September 2014, which resulted in her having a more difficult client.  *See* Docket No. 43 at 5, ¶¶ 43-44.  However, she has not provided any evidence that this adversely affected her performance.  Plaintiff also contends that management's decision to transition her work to other project managers beginning in February 2015 contributed to Ms. Farley's decision to include her in the layoff.  Yet plaintiff has not shown that either Mr. Halker or Mr. Hutchinson was specifically involved in the decision to transition her work.  The closest plaintiff gets to such evidence is her

18

testimony that "[w]e were actively transitioning . . . starting in February, per management's direction." Docket No. 44-1 at 6, 108:20-21. But plaintiff's general reference to "management" is insufficient, standing alone, to controvert the testimony by Mr. Halker and Mr. Hutchinson that they were not involved in the decision to transition plaintiff's projects in anticipation of her maternity leave. Docket No. 27-2 at 7, 90:17-24; Docket No. 59-5 at 3, 125:3-126:11.

The undisputed evidence shows that Ms. Farley recommended plaintiff's termination due to plaintiff's low score on the employee rating matrix. Docket No. 26 at 7, ¶¶ 20-21. As discussed above, there is no evidence that either Mr. Halker or Mr. Hutchinson provided input on plaintiff's rating or otherwise encouraged Ms. Farley to include plaintiff in the layoff.

Because plaintiff has failed to create a genuine dispute of fact as to whether the actions taken by Mr. Halker and Mr. Hutchinson "induced" her termination, defendants are entitled to summary judgment on plaintiff's claim for tortious interference. *Comtrol, Inc.*, 513 P.2d at 1084.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendants' Motion for Summary Judgment [Docket No. 26] is **GRANTED in part** and **DENIED in part**. It is further

**ORDERED** that plaintiff's first, second, and fourth claims for relief are dismissed with prejudice.

DATED March 26, 2018.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge