IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 16-cv-01838-PAB-NYW

JENNIFER CHRISTOS,

     Plaintiff,

v.

HALKER CONSULTING, LLC,

     Defendant.
_____

**ORDER**
_____

     This matter is before the Court on Plaintiff's Motion for Attorney's Fees [Docket No. 132] and Halker Consulting LLC's Motion to Review Taxation of Costs [Docket No. 136].

## I. BACKGROUND

     This lawsuit arises out of plaintiff Jennifer Christos' termination from Halker Consulting, LLC in May 2015. Plaintiff filed her complaint on July 19, 2016 asserting three claims against Halker Consulting: (1) sex and pregnancy discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended by the Pregnancy Discrimination Act of 1978; (2) retaliation under Title VII; and (3) interference with her rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.* Docket No. 1 at 6-9. Plaintiff also asserted a Colorado state-law claim for intentional interference with contract against Halker Consulting's Chief Operations Officer, Travis Hutchinson, and owner, Matthew Halker. *Id.* at 9. On March

26, 2018, the Court granted defendants' motion for summary judgment in part and dismissed plaintiff's discrimination, retaliation, and state-law contract claims. *See* Docket No. 75. Plaintiff's remaining claim for FMLA interference against Halker Consulting proceeded to trial on April 23, 2018. *See* Docket No. 102. On April 27, 2018, the jury returned a verdict in favor of plaintiff on her FMLA interference claim and awarded $1,296 in compensatory damages. Docket No. 112. On November 1, 2018, the Court awarded plaintiff the additional amount of $1,552.58, consisting of $128.29 in prejudgment interest and $1,424.29 in liquidated damages, as well as her costs under Fed. R. Civ. P. 54(d). Docket No. 129 at 5.

On November 15, 2018, plaintiff moved for an award of attorney's fees pursuant to 29 U.S.C. § 2617(a)(3) and Fed. R. Civ. P. 54(d). Docket No. 132. On November 29, 2018, the Clerk of Court taxed costs against Halker Consulting in the amount of $7,071.69. Docket No. 134. Defendant filed a motion seeking review of the costs taxed on December 6, 2018. Docket No. 136.

## II. MOTION FOR ATTORNEY'S FEES

Plaintiff moves, pursuant to 29 U.S.C. § 2617(a)(3) and Fed. R. Civ. P. 54(d), for an award of $183,498.75 in attorney's fees and $252.43 in litigation expenses. *See* Docket No. 132 at 1, 15.[1] Section 2617(a)(3) provides that the "court in [an FMLA] action shall, in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid

---

[1]Rule 54(d) prescribes the procedural mechanism for seeking attorney's fees in federal court. It does not create a separate, substantive right to an award of attorney's fees. *See Wolf v. Petrock*, No. 08-cv-02749-PAB-KMT, 2010 WL 2232353, at *1 n.1 (D. Colo. June 2, 2010).

by the defendant."

Defendant does not dispute that the jury's verdict in favor of plaintiff on her FMLA interference claim makes her the prevailing party for purposes of an attorney's fee award. *See* Docket No. 135 at 1. Defendant argues, however, that the Court should award plaintiff no or few fees under the factors set forth in Justice O'Connor's concurrence in *Farrar v. Hobby*, 506 U.S. 103 (1992). Docket No. 135 at 1-8. Alternatively, defendant contends that, even if plaintiff is entitled to a calculation of her lodestar amount, such sum should be reduced significantly to account for (a) hours expended before plaintiff's receipt of her right to sue letter on April 28, 2016; (b) hours expended after defendant's $50,000 settlement offer on April 5, 2018; (c) hours expended on plaintiff's unsuccessful Title VII and interference with contract claims; and (d) plaintiff's limited success on her FMLA interference claim. *See id.* at 8-14.

### A. *Farrar* Factors[2]

While the Court's discretion to deny attorney's fees to a prevailing party is narrow, *Phelps v. Hamilton*, 120 F.3d 1126, 1131 (10th Cir. 1997), the Court may award no or few fees if it finds that the party's victory was "purely technical or *de minimis*."

---

[2]Some courts have considered the *Farrar* factors as part of the lodestar calculation and not as a threshold inquiry. *See, e.g.*, *Smith v. T.W. Clyde, O.D., P.C.*, No. 13-cv-01672-WJM-KLM, 2015 WL 7774199, at *5 (D. Colo. Dec. 3, 2015); *see also Barber v. T.D. Williamson, Inc.*, 254 F.3d 1223, 1230 (10th Cir. 2001) (looking to the *Farrar* factors to determine a reasonable fee). However, because defendant has raised consideration of the *Farrar* factors as a preliminary issue, the Court will follow the same approach. *See, e.g.*, *Zinna v. Congrove*, 680 F.3d 1236, 1242 (10th Cir. 2012) (holding that the plaintiff's victory was not *de minimis* or technical under the *Farrar* factors, but remanding the case to the district court for calculation of a reasonable fee award); *see also Farrar*, 506 U.S. at 117 (O'Connor, J., concurring) (stating that, "when a plaintiff's victory is purely technical or *de minimis*, a district court need not go through the usual complexities in calculating attorney's fees").

*Farrar*, 506 U.S. at 117-18 (O'Connor, J., concurring).[3]  In determining whether this standard is satisfied, the Court considers three factors (the "*Farrar* factors"):  (1) the "degree of success obtained" by the plaintiff; (2) "the extent to which the plaintiff[] succeeded on [her] theory of liability"; and (3) the "public purpose served by the plaintiff['s] success."  *Zinna v. Congrove*, 680 F.3d 1236, 1239-40 (10th Cir. 2012) (citing *Farrar*, 506 U.S. at 116-20 (O'Connor, J., concurring)).  The Court "must consider and weigh all three factors, and no factor is dispositive."  *Id.* at 1240.

### 1.  *Amount Recovered Versus Amount Sought*

The first *Farrar* factor concerns the "difference between the judgment recovered and the recovery sought."  *Zinna*, 680 F.3d at 1240.  This is the "most critical" factor in determining whether a plaintiff's victory is merely technical or *de minimis*, but it is not determinative.  *Id.*

During closing argument in this case, plaintiff asked the jury to award her $105,083 in compensatory damages.  While the jury's ultimate award of $1,296 was merely a fraction of that amount, the difference between the amount awarded and the amount sought is not as stark as in *Farrar*, where the plaintiff sought $17 million in damages, but received $1.  *See Farrar*, 506 U.S. at 121.  Moreover, the jury's finding that defendant had not proved that it acted in good faith and with reasonable grounds

---

[3]Although *Farrar* considered a plaintiff's entitlement to attorney's fees under 42 U.S.C. § 1988, courts have applied the *Farrar* factors to fee requests under § 2617(a)(3).  *See, e.g.*, *Holder v. Ill. Dep't of Corrs.*, 2012 WL 5077644, at *3 (S.D. Ill. Oct. 18, 2012) (applying the *Farrar* factors to determine whether to reduce the lodestar amount in an FMLA case); *Rice v. Sunrise Express, Inc.*, 237 F. Supp. 2d 962, 974-77 (N.D. Ind. 2002) (same); *cf. Brandau v. Kansas*, 168 F.3d 1179, 1182-83 (10th Cir. 1999) (applying *Farrar* analysis to fees awarded under Title VII).

for believing that plaintiff's termination did not violate the FMLA, Docket No. 112 at 3, resulted in an additional liquidated damages award of $1,424.29, which somewhat reduced the gap between the recovery sought and the relief obtained. *See* Docket No. 129 at 4-5. The first *Farrar* factor therefore weighs only slightly in defendant's favor. *See Zinna*, 680 F.3d at 1240 (holding that the first *Farrar* factor weighed in favor of awarding low or no fees where there was a "substantial gap between the relief [the plaintiff] sought and the damages he received"); *Brandau*, 168 F.3d at 1182 (holding that the district court appropriately evaluated the reasonableness of a fee award under the *Farrar* factors in finding that the "difference between the judgment recovered and the recovery sought was significantly distinct from the corresponding difference in *Farrar*" where the plaintiff "sought only back pay for twenty-one months and $50,000 in non-economic damages[,] while Mr. Farrar sought damages of $17 million"); *Stoedter v. Gates*, 320 F. Supp. 3d 1265, 1274 (D. Utah 2018) ("While Plaintiff's nominal damages are a limited recovery compared to what he sought, such discrepancy is substantially less than the discrepancy in *Farrar* . . . ."); *see also Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 168 (2d Cir. 2011) ("FMLA claims are often small-ticket items, and small damages awards should be expected without raising the inference that the victory was technical or de minimis.").

### 2. *Significance of the Legal Issue*

The second *Farrar* factor "goes beyond the actual relief awarded to examine the extent to which the [plaintiff] succeeded on [her] theory of liability." *Zinna*, 680 F.3d at 1240 (internal quotation marks omitted). Defendant argues that this factor supports

awarding low or no attorney's fees in this case because plaintiff did not vindicate important constitutional rights or reveal systemic discrimination against a protected class, she did not receive non-pecuniary relief, and the only claim on which she prevailed "was clearly not her most important theory of liability." Docket No. 135 at 4. Defendant's first argument is irrelevant to the Court's analysis of the second factor, which "focuses on the extent of success as opposed to the importance of the legal issue." *Barber*, 254 F.3d at 1231. Likewise, defendant's second argument regarding plaintiff's failure to obtain non-pecuniary relief is better addressed under the first factor, which the Court has already determined weighs slightly in defendant's favor.

As to the extent of plaintiff's success, the jury determined that defendant "took an adverse action" related to the "exercise or attempted exercise of plaintiff's FMLA rights" that "interfered with [her] right to take FMLA leave." Docket No. 112 at 2. The jury further concluded that defendant had not proved "that it acted in good faith and with reasonable grounds for believing that plaintiff's termination did not violate the FMLA." *Id.* at 3. Plaintiff therefore prevailed on the only two issues submitted to the jury for consideration. The fact that some of plaintiff's claims were dismissed on summary judgment does not alter the conclusion that the jury's verdict amounted to a substantial vindication of plaintiff's rights. In other words, regardless of whether FMLA interference was plaintiff's "*most* important theory of liability" at all stages of the litigation, Docket No. 135 at 4 (emphasis added), it was a "significant issue . . . which achieve[d] some of the benefit [plaintiff] sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (internal quotation marks omitted); *see also Zinna*, 680 F.3d at 1238, 1240 (holding that the plaintiff prevailed on a significant issue in litigation even though other

6

claims and defendants were dismissed prior to trial); *Layton v. Bd. of Cty. Comm'rs of Oklahoma County*, 2014 WL 652311, at \*3 (W.D. Okla. Feb. 19, 2014) (holding that the second *Farrar* factor weighed in favor of a fee award where the plaintiff "prevailed on the only issue submitted to the jury"). Accordingly, the second *Farrar* factor does not support a finding that plaintiff's success was merely technical or *de minimis*.

### 3. *Public Purpose of the Litigation*

Under the final *Farrar* factor, the Court "considers whether the plaintiff's claim accomplished some public goal." *Zinna*, 680 F.3d at 1240 (internal quotation marks omitted). The Tenth Circuit has construed this factor broadly. *See Barber v. T.D. Williamson, Inc.*, 254 F.3d 1223, 1232 (10th Cir. 2001). Accordingly, "a public goal is accomplished if the plaintiff's victory encourages attorneys to represent civil rights litigants, affirms an important right, puts the defendant on notice that it needs to improve, and/or provokes a change in the defendant's conduct." *Id.*

The Court finds that the third factor weighs in plaintiff's favor. The jury's finding that defendant interfered with plaintiff's rights under the FMLA affirmed an important statutory right of employees, *see Millea*, 658 F.3d at 167 (noting Congress's "policy determination that FMLA claims serve an important public purpose disproportionate to their cash value," as evidenced by the FMLA's fee-shifting provision); *see also Koopman v. Water Dist. No. 1 of Johnson Cty., Kan.*, 41 F.3d 1417, 1421 (10th Cir. 1994) (holding that case was distinguishable from *Farrar* because it "had significant implications in establishing basic rights for public employees"), and highlighted the subtle ways in which an employer may penalize an employee for exercising his or her

right to FMLA leave.  An award of attorney's fees in this case will also encourage attorneys to take on FMLA cases in the future.  This is particularly important in the context of FMLA litigation, where the comparatively low damages awards, *see Millea*, 658 F.3d at 168, otherwise serve as a disincentive for attorneys to assist employees in vindicating their rights under the statute.

Defendant argues that plaintiff's lawsuit did not serve a public purpose because plaintiff was not seeking to vindicate a constitutional right and there is no evidence that the case will "deter future lawless conduct."  Docket No. 135 at 4, 6.[4]  However, defendant does not point to any authority distinguishing between constitutional and statutory claims for purposes of the *Farrar* analysis.  And defendant's suggestion that a plaintiff must show discriminatory animus or "systemic interference with FMLA leave" in order to obtain attorney's fees, *see* Docket No. 135 at 6 (citing, in support of the denial of fees, the fact that defendant "decided to lay off employees because it was suffering financially" and plaintiff's failure to show that "factors apart from plaintiff's low score played a role in her termination"), would impose an undue burden on plaintiffs asserting individual claims for FMLA interference, which, by their nature, do not require a showing of discriminatory intent.  *See Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1180 (10th Cir. 2006) (stating that "a denial, interference, or restraint of FMLA rights is a violation regardless of the employer's intent").  Moreover, to the extent

---

[4]Defendant also urges the Court to consider plaintiff's rejection of a $50,000 settlement offer as part of its *Farrar* analysis.  *See* Docket No. 135 at 7.  But defendant does not explain how this fact relates to any of the *Farrar* factors.  The Court therefore declines to consider it in determining whether plaintiff's victory was technical or *de minimis*.

defendant suggests that the litigation will not have any impact on its future conduct, plaintiff correctly points out that the interest in "[d]eterring future lawless conduct is not limited to Defendant itself." Docket No. 138 at 4; *see also, e.g.*, *Smith v. T.W. Clyde, O.D., P.C.*, No. 13-cv-01672-WJM-KLM, 2015 WL 7774199, at *6 (D. Colo. Dec. 3, 2015) (finding that, even if "the changes made to the management of Defendant's business would have happened anyway and were not a result of" the lawsuit, the third factor weighed in favor of a substantial fee award because plaintiff's success would deter "other business owners and employers from engaging in similar discriminatory conduct"). For the reasons discussed above, plaintiff's FMLA interference claim served to "vindicate[] important rights and deter[] future lawsuit conduct as opposed to merely occupying the time and energy of counsel, court, and client." *Zinna*, 680 F.3d at 1241 (internal quotation marks omitted). Accordingly, the third *Farrar* factor supports an award of reasonable attorney's fees.

Because two out of three of the *Farrar* factors weigh in favor of a conclusion that plaintiff's victory was not merely technical or *de minimis* and collectively outweigh the other factor, the Court holds that plaintiff is entitled to reasonable attorney's fees related to the litigation of her FMLA interference claim. *See Zinna*, 680 F.3d at 1242 (holding that the plaintiff was entitled to an award of reasonable attorney's fees where the second and third *Farrar* factors supported a conclusion that the plaintiff's victory was "not merely technical").

### B. Reduction of Lodestar Amount

Given the Court's determination that plaintiff is entitled to a fee award, the Court

must next assess the reasonableness of the fees requested by plaintiff. The starting point in this analysis is the calculation of the "lodestar amount," which represents the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Hensley*, 461 U.S. at 433. While there is a strong presumption that this method yields a reasonable fee, *see Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010), the party seeking an award of attorney's fees has the initial burden of establishing the reasonableness of each dollar and each hour for which the party seeks an award. *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995).

Plaintiff requests attorney's fees in the amount of $183,498.75, which reflects plaintiff's lodestar amount, reduced by ten percent, for 781.5 hours expended on the litigation at rates ranging from $125 per hour for a law clerk to $350 per hour for Rachel Ellis, the lead attorney on the case. *See* Docket No. 132. Plaintiff also requests reimbursement of $252.43 in litigation expenses. Docket No. 132 at 15. Defendant argues that the requested fee award should be reduced to exclude hours billed prior to April 28, 2016, hours billed after April 5, 2018, and hours spent on plaintiff's unsuccessful discrimination, retaliation, and intentional interference with contract claims. *See* Docket No. 135 at 8-13. Defendant also contends that the lodestar amount should be further reduced to reflect plaintiff's limited success on her FMLA interference claim. *See id.* at 13-14.

### 1. Hours Billed Prior to April 28, 2016

Defendant requests that the Court exclude from the lodestar amount all hours billed prior to plaintiff receiving her Notice of Right to Sue from the Equal Employment

Opportunity Commission ("EEOC") on April 28, 2016.   Docket No. 135 at 8-9.

Defendant contends that all of those hours "relate exclusively to work done" on

plaintiff's Title VII claims before the EEOC, and that plaintiff's FMLA claim did not

require her to exhaust administrative remedies before filing suit in federal court.  *Id.*

Plaintiff responds that hours billed prior to April 28, 2016 are properly included in the

lodestar calculation because her FMLA interference claim was "factually related to her

Title VII claims" and "[i]nformation acquired during the EEOC process affected" her

litigation of the FMLA claim.  Docket No. 138 at 7.

The Court agrees with defendant that hours expended in the EEOC proceedings

should be excluded from the lodestar amount.  While plaintiff contends that her FMLA

and Title VII claims are factually related, *see* Docket No. 138 at 7, the issue defendant

raises is not whether plaintiff may seek fees for time spent on her unsuccessful claims,

but whether plaintiff is entitled to reimbursement for work performed outside the context

of her lawsuit.  In *Webb v. Board of Education of Dyer County, Tennessee*, 471 U.S.

234 (1985), the Supreme Court held that a plaintiff was not entitled to attorney's fees

under 42 U.S.C. § 1988 for time spent on optional administrative proceedings before

the filing of his federal lawsuit.  *See id.* at 241-43.  In so holding, the Supreme Court

rejected the petitioner's argument that work in the administrative proceedings "was

analogous to discovery, investigation, and research that are part of any litigated

proceeding," reasoning that it was difficult to view the time spent on the administrative

proceedings "as part of the costs" of the civil rights action within the meaning of § 1988.

*Id.* at 242 (internal quotation marks omitted).

Although this case involves a different fee-shifting provision, the Court finds *Webb*'s reasoning equally applicable to attorney's fee awards under § 2617(a)(3). Section 2617(a)(3) states that the court in an FMLA action shall "allow a reasonable attorney's fee, reasonable expert witness fees, and other costs *of the action*." 29 U.S.C. § 2617(a)(3) (emphasis added). Because there is no requirement that a plaintiff exhaust administrative remedies prior to bringing an FMLA claim, the time spent by counsel on the EEOC proceedings cannot fairly be considered a "cost[] of the action" under § 2617(a)(3). *See Boadi v. Ctr. for Human Dev., Inc.*, 2017 WL 5178791, at *4 (D. Mass. Nov. 8, 2017) (relying on *Webb* to hold that the FMLA's fee-shifting provision did not allow the recovery of attorney's fees for time spent on administrative proceedings unnecessary to the FMLA claim). The Court reaches this conclusion notwithstanding the fact that plaintiff's FMLA claim may be related to her Title VII claims, which claims do require a plaintiff to exhaust administrative remedies before filing suit in federal court. *See id.* at *4 (excluding time spent on administrative proceedings even though they were necessary for ADA and state-law claims dismissed on summary judgment).

The next challenge is to determine which of the time entries before April 28, 2016 relate to the administrative proceedings. Although defendant seeks to exclude all hours billed before that date, *see* Docket No. 135 at 8, the Supreme Court recognized in *Webb* that "some of the services performed before a lawsuit is formally commenced . . . are performed 'on the litigation.'" 471 U.S. at 243. Based on a review of counsel's billing records, the Court finds that the time entries for May 11, 2015 through June 1,

2015, which reflect hours spent establishing an initial client relationship and drafting a demand letter, *see* Docket No. 132-3 at 18-19, constitute time reasonably expended on the litigation for purposes of the lodestar calculation. *Hensley*, 461 U.S. at 433; *see also Ray Haluch Gravel Co. v. Cent. Pension Fund of Int'l Union of Operating Eng'rs & Participating Emp'rs*, 571 U.S. 177, 189-90 (2014) ("Investigation, preliminary legal research, drafting of demand letters, and working on the initial complaint are standard preliminary steps toward litigation."). The Court is unable to reach this conclusion as to the remaining time entries before April 28, 2016 because they are insufficiently specific to allow the Court to determine whether they reflect "work that was both useful and of a type ordinarily necessary to advance the . . . litigation." *Webb*, 471 U.S. at 243. Because plaintiff has made no showing as to the reasonableness of those hours, *see Jane L.*, 61 F.3d at 1510 (stating that it is plaintiff's burden to establish the reasonableness of every hour spent on the litigation), the Court will exclude them from the lodestar calculation. Plaintiff's lodestar calculation will therefore be reduced by $4,512.50, the amount of attorney's fees billed from June 2, 2015 through April 21, 2016. *See* Docket No. 132-3 at 17-18.

### 2. Hours Billed After April 5, 2018

Defendant argues that the Court should exclude from the lodestar amount "all hours billed subsequent to Plaintiff's April 5, 2018, rejection of a highly favorable settlement offer of $50,000." Docket No. 135 at 9. In support of this argument, defendant relies on *Lohman v. Duryea Borough*, 574 F.3d 163 (3d Cir. 2009), and *Cellport Systems Inc. v. Peiker Acustic GMBH & Co.,* No. 09-cv-01007-RBJ-MJW, 2016

WL 7375307 (D. Colo. Dec. 20, 2016), in which courts reduced fee awards to exclude time spent on the litigation after the plaintiffs rejected offers of settlement.  *See Lohman*, 574 F.3d at 168-69; *Cellport Sys. Inc.*, 2016 WL 7375307, at *3-4.  However, defendant's theory is inconsistent with the Tenth Circuit's holding in *Cooper v. Utah*, 894 F.2d 1169 (10th Cir. 1990), that the "downward adjustment of fees based on settlement negotiations is not well-founded" where there is no indication that the defendant made an offer of judgment pursuant to Fed. R. Civ. P. 68.  *Id.* at 1172.[5] Defendant attempts to distinguish *Cooper* on the basis that the scope of the Tenth Circuit's reasoning was "unclear and, in any event, possibly dictum."  Docket No. 135 at 7 n.2.  The Court disagrees.  Moreover, the Court is persuaded by the rationale underlying the Tenth Circuit's decision – to the extent defendant wished to protect itself against unnecessary costs, its mechanism for doing so was Fed. R. Civ. P. 68.  *Cooper*, 894 F.2d at 1172.  Because defendant has presented no evidence that it availed itself of that rule, the Court declines to reduce the lodestar amount to exclude hours billed

---

[5]The cases cited by defendant also do not support defendant's argument that the Court should reduce the lodestar to exclude all hours expended on the litigation after April 5, 2018.  In *Lohman*, the Third Circuit affirmed the district court's holding that evidence of settlement negotiations may sometimes be used as "an indicator of the degree of success obtained" by a plaintiff for purposes of calculating a reasonable fee award.  *Lohman*, 574 F.3d at 165; *see also id.* at 167 (explaining that "[s]uch evidence can be relevant when comparing what a plaintiff 'requested' to what the plaintiff was ultimately 'awarded'").  Contrary to defendant's assertion, the Third Circuit did not hold that a court should reduce a plaintiff's lodestar amount to exclude all hours billed by plaintiff's counsel following a rejected offer of settlement.  *See id.* at 168-69, 168 n.4 (distinguishing Second Circuit case on the basis that the district court "did not deny Lohman fees and costs incurred after the rejected offer, but merely reduced the fee award in part because Lohman was ultimately awarded substantially less than he sought").  To the extent *Cellport Systems Inc.* stands for that proposition, it is not supported by either *Lohman* or *Cooper*.

after the April 5, 2018 offer of settlement. *See Knoeffler v. Town of Mamakating*, 126 F. Supp. 2d 305, 315 (S.D.N.Y. 2000) (relying on *Cooper* to hold that a defendant was not entitled to a downward adjustment of the fee award based on the defendant's oral offer to engage in settlement discussions).

### 3. Reduction for Hours Spent on Unsuccessful Claims and Plaintiff's Limited Success

Defendant argues that the Court should reduce plaintiff's lodestar amount by at least thirty-five percent to account for time spent on plaintiff's unsuccessful claims and counsel's failure to keep meticulous billing records. Docket No. 135 at 10-13. Defendant also contends that the lodestar amount should be reduced by an additional seventy-five percent due to plaintiff's limited overall success in the litigation. *Id.* at 13-14.

When a party prevails on only certain claims, the Court applies a two-part framework to determine a reasonable fee award. *See R. M-G. v. Bd. of Educ. for the Las Vegas City Schools*, 645 F. App'x 672, 676 (10th Cir. 2016) (unpublished). The Court first asks whether the party lost "on claims that were unrelated to the claims on which he succeeded." *Hensley*, 461 U.S. at 434. If so, the unrelated claims must "be treated as if they had been raised in separate lawsuits, and . . . no fee may be awarded for services on the unsuccessful claim." *Id.* at 435. If the claims are related, however, the Court must consider "the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.*

The Court begins by addressing whether plaintiff's unsuccessful claims for Title VII discrimination, Title VII retaliation, and intentional interference with contract were

"related" to her FMLA interference claim for purposes of the lodestar analysis.

"[C]laims are related if they are based on a common core of facts" or "related legal theories." *Flitton v. Primary Residential Mortg., Inc.*, 614 F.3d 1173, 1177 (10th Cir. 2010) (citing *Jane L.*, 61 F.3d at 1512); *see also Hensley*, 461 U.S. at 434 (claims are unrelated if they are "based on different facts and legal theories").  Here, although plaintiff's claims rested on distinct legal theories, they all concerned the reason for plaintiff's inclusion in the company-wide layoff in May 2015.  *See* Docket No. 1 at 7-10, ¶¶ 46-47, 50, 55, 58, 67, 72.  The Court therefore finds that plaintiff's claims were interrelated for purposes of the lodestar analysis.  *See Flitton*, 614 F.3d at 1177 (holding that claims were related where they concerned the same "crucial underlying fact . . . – the reason for [the plaintiff's] termination"); *see also M.S. ex rel. J.S. v. Utah Schs. for Deaf & Blind*, 822 F.3d 1128, 1138 (10th Cir. 2016) (noting that cases "involving truly unrelated claims . . . are unlikely to arise with great frequency" (internal quotation marks omitted)).

The Court agrees with defendant, however, that the lodestar should be reduced to account for plaintiff's limited overall success in the litigation.  *See Flitton*, 614 F.3d at 1178 (stating that "a reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole").  While plaintiff's claims shared a "common core of facts" related to the layoff, they also advanced three distinct factual theories of liability.  First, plaintiff alleged that defendants violated Title VII and interfered with her employment contract when they allowed a former supervisor, Phil Jimenez, to mistreat female employees and then penalized plaintiff for complaining

about the mistreatment.  *See* Docket No. 75 at 8 (stating that the evidence cited in

support of plaintiff's Title VII discrimination claim "demonstrate[d] that plaintiff was

discriminated against by Mr. Jimenez on account of her sex in 2014 and that Mr.

Hutchinson did not take appropriate steps to address the situation"), 11-12 (noting

plaintiff's contention that it was "'conceivable' that defendants would not have

questioned her commitment to the company, removed her from a successful project,

reduced her workload, and included her in the May 1 layoff had she not complained

about discriminatory treatment"), 18 (noting that plaintiff "base[d] her contractual

interference claim on allegations that Mr. Halker and Mr. Hutchinson participated in and

condoned discrimination against her and set her up to fail" (internal quotation marks

and brackets omitted)).

Second, plaintiff asserted that defendants violated the FMLA by failing to provide

her with information regarding her leave rights.  *See* Docket No. 1 at 9, ¶¶ 65-66;

Docket No. 75 at 15 n.10 (discussing plaintiff's claim that defendants failed to provide

her with information regarding her FMLA leave rights).  Finally, plaintiff alleged that

defendants interfered with her rights under the FMLA by including her in the layoff, in

part, because she had begun transitioning her work to other project managers in

anticipation of her maternity leave.  *See* Docket No. 75 at 15-16 (noting argument that

plaintiff's "termination was clearly related to her anticipated leave because plaintiff's

lack of work at the time – which was the direct result of her being required to transition

her work to other project managers in anticipation of maternity leave – was cited by Ms.

Farley as one of the reasons for including her in the layoff").  This final theory is the only

one on which plaintiff prevailed.  The Court rejected plaintiff's first two theories on

summary judgment, finding that (1) plaintiff had not shown any connection between defendants' conduct in 2014 related to Mr. Jimenez's mistreatment of female employees and plaintiff's inclusion in the May 1, 2015 layoff, *see* Docket No. 75 at 9, 12, 18-19; and (2) plaintiff could not establish any prejudice arising from defendants' failure to provide information regarding her FMLA leave rights because she was terminated prior to the start of her leave. *See id.* at 15 n.10. Given that plaintiff's counsel spent a significant amount of time developing these two theories of liability, which ultimately proved unsuccessful, the Court finds that the total number of hours expended on the litigation was not reasonable in relation to the results obtained. *See Hensley*, 461 U.S. at 435; *Zinna*, 680 F.3d at 1242 n.1 (noting that, although the district court's $8,000 fee award was arbitrary, plaintiff was "clearly not entitled to $503,000" in attorney's fees, which included "costs for work related to Zinna's failed damages request and for litigation surrounding claims in which Zinna did not succeed").

Having determined that the number of hours expended on the litigation was unreasonable, the Court has discretion to "attempt to identify specific hours that should be eliminated" or to "simply reduce the award to account for the limited success." *Hensley*, 461 U.S. at 436-37. Because the billing records do not allow the Court to easily segregate the hours spent on each of plaintiff's claims and theories of liability, the Court opts for a general reduction of the total fee award.

Defendant urges the Court to "divide the lodestar amount by the overall number of claims" to arrive at a reduction of seventy-five percent. Docket No. 135 at 14. However, the Tenth Circuit has rejected such a mechanical approach, holding that a district court "must make a qualitative assessment to determine what less-than-perfect

results are 'excellent,' justifying full recovery, or to what extent plaintiffs' 'limited success' should effect a reduction in the lodestar." *See Flitton*, 614 F.3d at 1178 (noting that the court had previously "reversed a district court's decision to reduce the lodestar by seventy-five percent based on the plaintiff's success on only two out of eight claims"); *see also Hensley*, 461 U.S. at 435 n.11 ("We agree with the District Court's rejection of a mathematical approach comparing the total number of issues in the case with those actually prevailed upon." (internal quotation marks omitted)).

Undertaking that qualitative assessment in this case, the Court finds that a twenty-five percent reduction is warranted. While "a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised," *Hensley*, 461 U.S. at 440, this is not a case in which plaintiff "raise[d] a number of alternative interrelated claims and achiev[ed] the principal goal of the lawsuit" based on one of those alternatives. *Chavez v. Stomp*, 2014 WL 12796784, at *7 (D.N.M. Feb. 27, 2014). Instead, she sought to hold defendants liable for a broad range of discriminatory and retaliatory conduct dating back to the fall of 2014, but ultimately succeeded on a much narrower theory of liability. This, combined with the fact that plaintiff recovered only a small percentage of the total damages sought, supports a finding that her success in the litigation was circumscribed and that a twenty-five percent reduction in the fee award is appropriate. *Compare Chavez*, 2014 WL 12796784, at *9 (finding lesser reduction of ten percent appropriate where the plaintiff "succeeded on a relatively important claim . . . *and* achieved a significant damages award" (emphasis added)), *with Zisumbo v. Ogden Reg'l Med. Ctr.*, 801 F.3d 1185, 1208 (10th Cir. 2015) (affirming forty-percent reduction of fee award based on the

plaintiff's lack of success on his discrimination and good faith and fair dealing claims);

*Doe ex rel. Doe v. Keala*, 361 F. Supp. 2d 1171, 1187 (D. Haw. 2005) (reducing hours reported by plaintiff's counsel by fifty-five percent to account for the plaintiff's lack of success against certain defendants and the low damages award which, "[m]easured against the years of litigation, the considerable amount of resources expended on th[e] case, and Plaintiffs' (and their counsels') expectations," represented a "substantial defeat").

The Court finds any further reduction of the lodestar to be unwarranted. The Court has already determined that plaintiff's recovery at trial, though low in comparison to the recovery sought, was not merely technical. Moreover, plaintiff succeeded in vindicating her rights under the FMLA, which was a central goal of the lawsuit. *See Chavez*, 2014 WL 12796784, at *10 (rejecting defendant's proposed 50% reduction in fee award where plaintiff succeeded on his relatively important First Amendment retaliation claim). Finally, a significant number of the hours included in plaintiff's lodestar calculation were billed after the dismissal of plaintiff's Title VII and contractual interference claims on summary judgment. *See* Docket No. 132-3 at 2-7. Any reduction beyond twenty-five percent would therefore result in a fee insufficient to compensate plaintiff's counsel for the time and effort expended on the litigation through trial.[6]

_____

[6]Although defendant separately argues that the fee award should be reduced by thirty-five percent to account for plaintiff's "inadequate documentation of hours," Docket No. 135 at 13, the Court finds that a twenty-five percent reduction of the lodestar is sufficient to account for the time spent on plaintiff's unsuccessful claims, plaintiff's limited monetary recovery, and any ambiguity in the time records that might make it difficult for the Court to determine the number of hours spent on each claim. To the

## C. Calculation of Lodestar

Plaintiff calculated her initial lodestar at $203,887.50 based on a total of 781.5

hours at rates of $125 to $350 per hour. *See* Docket No. 132 at 8.[7] After subtracting

extent defendant seeks a percentage reduction to account for excessive, redundant, or otherwise unnecessary hours, *see* Docket No. 135 at 13, the Court does not find the cited entries so ambiguous as to preclude defendant from raising a more specific challenge to the number of hours spent on particular tasks. *Compare Jane L.*, 61 F.3d at 1510 (affirming thirty-five percent reduction in fee award where the "plaintiffs' time records include[d] unspecified or inadequately specified 'review' time, excessive travel time, unnecessary and duplicative time spent in conference calls, meetings, and hearings, noncompensable pubic relations time, noncompensable time expended after the judgment was rendered, and noncompensable clerical or 'overhead' time" (internal quotation marks omitted). For example, defendant argues that the paralegal entries for time spent reviewing depositions and composing deposition fact charts in April and May 2017 are "sloppy" and "imprecise." Docket No. 135 at 12-13 n.3. However, the billing records were sufficiently precise to allow defendant to calculate the total number of paralegal hours spent on deposition review and fact charts and to determine whether that total reflected a reasonable expenditure of time in light of the number of individuals deposed and plaintiff's summary judgment response. Defendant could have made a similar determination with respect to the hours spent on plaintiff's summary judgment response. *See* Docket No. 135 at 12 n.3. But defendant does not attempt these calculations or argue that the time spent on particular tasks – such as reviewing depositions or drafting the summary judgment response – was excessive, redundant, or unnecessary. Absent such an argument, the Court declines to reduce the fee award simply because the billing records do not achieve the precise level of granularity defendant desires. *Cf. Flying J Inc. v. Comdata Network, Inc.*, 322 F. App'x 610, 617 (10th Cir. 2009) (unpublished) (declining to adopt categorical rule "requiring a reduction in fees when attorneys have block billed").

[7]Apart from the arguments already addressed, defendant does not challenge the reasonableness of specific time entries or the billing rates charged by plaintiff's counsel. Having reviewed the billing records and counsel's accompanying affidavits, the Court does not find the hours billed by plaintiff's counsel to be patently excessive, redundant, or unnecessary, and the billing rates proposed by plaintiff's counsel are consistent with prevailing rates in the Denver legal community. *See Hayes v. Skywest Airlines, Inc.*, No. 15-cv-02015-REB-NYW, Docket No. 220 at 3-4 (D. Colo. July 2, 2018) (approving of billing rates of $150 to $450 per hour in ADA/FMLA lawsuit); *see also* Docket No. 132-4 (affidavit of Rachel Ellis); Docket No. 132-5 (affidavit of Brooke Meyer); Docket No. 132-6 at 3, ¶¶ 6-9 (affidavit of Charlotte Sweeney discussing billing rates for Sweeney & Bechtold, LLC and customary rates in the Denver legal community); Docket No. 132-7 at 6-7, ¶¶ 11-14 (affidavit of Matthew Cron discussing billing rates for Rathod

$4,512.50 for the hours expended on the EEOC proceedings and reducing the fee award by an additional twenty-five percent to account for plaintiff's limited overall success in the litigation,[8] the Court finds plaintiff is entitled to attorney's fees in the amount of $149,531.25.[9] The Court finds this to be a reasonable sum in light of the results obtained in the litigation.

### D.  Non-taxable Costs

Plaintiff seeks reimbursement of $252.43 in non-taxable costs related to this litigation.  Docket No. 132 at 15.  This amount consists of $140.00 in parking expenses, $76.90 in PACER fees, and $35.53 in postage and courier fees.  Docket No. 132-9 at 2-3.

The Court declines to award plaintiff her costs for parking, PACER, and courier fees.  While such costs "may be reimbursable, subject to a showing that these types of costs are normally billed to a private client in the local area," *Vialpando v. Johanns*, 619 F. Supp. 2d 1107, 1130 (D. Colo. 2008) (internal quotation marks and emphasis omitted), plaintiff has not made such a showing in this case.  Plaintiff has submitted an affidavit from Charlotte Sweeney in which she states that her Denver employment law firm, Sweeney & Bechtold, LLC, "regularly and customarily bills its clients for out-of-pocket expenses such as fees of investigators, fees of court reporters to take and

─────────────────────

Mohamedbhai, LLC and customary rates in the Denver legal community).

[8]The Court applies the twenty-five percent reduction in place of, rather than in addition to, the ten percent reduction already applied by plaintiff's counsel.  *See* Docket No. 132 at 8.

[9]Because the Court accepts the billing rates proposed by plaintiff's counsel, the reduction in fees amounts to a reduction in hours billed for purposes of the fee award.

prepare transcripts of depositions, copy charges . . ., travel and hotel expenses, messenger services, long distance telephone charges, express mail charges, postage, computerized research, and expenses involved in preparing exhibits." Docket No. 132-6 at 4. However, the affidavit does not address parking, PACER, or courier fees, and plaintiff has not otherwise shown that these fees are customarily billed to private clients in the Denver area. *See* Docket No. 132 at 15; Docket No. 138 at 10 (reiterating request for costs without providing any additional evidence that such costs are customarily billed to private clients). The Court will therefore award only the $5.94 incurred for postage, which is addressed in Ms. Sweeney's affidavit. *See Deasey v. Optimal Home Care, Inc.*, No. 17-cv-00287-MSK-CBS, 2019 WL 2521676, at *3 (D. Colo. June 19, 2019) (declining to award any of the plaintiff's claimed costs, including parking and PACER fees, where plaintiff's counsel had failed to show "by affidavit or otherwise, that these types of costs are typically billed to private clients in the Denver area"); *Avalanche Equipment, LLC v. Williams-Southern Co., LLC*, No. 13-cv-02827-NYW-MJW, 2015 WL 3635861, at *3 (D. Colo. June 11, 2015) (declining to award costs for mileage and parking because there was "no contention in [the plaintiff's] affidavit that [mileage and parking] is a normal charge for local attorneys of private clients in this area").

## III. MOTION FOR REVIEW OF COSTS TAXED

Defendant moves, pursuant to Fed. R. Civ. P. 54(d)(1), for review of the $7,071.69 in costs taxed by the Clerk of Court on November 29, 2018. Docket No. 136. Fed. R. Civ. P. 54(d) provides that costs "should be allowed to the prevailing party" and that, on motion, a district court may review the Clerk's taxing of costs. Fed. R. Civ. P.

54(d)(1).  An award of costs falls within the broad discretion of the district court, which is bounded by two principles: the prevailing party is presumptively entitled to costs and, if costs are denied, the district court must set forth a "valid reason" for the denial.  *See Cantrell v. Int'l Brotherhood of Elec. Workers, AFL-CIO, Local 2021*, 69 F.3d 456, 458-59 (10th Cir. 1995) (en banc); *see also Rodriguez v. Whiting Farms, Inc.*, 360 F.3d 1180, 1190 (10th Cir. 2004) (stating that the "denial of costs is in the nature of a severe penalty, and there must be some apparent reason to penalize the prevailing party if costs are to be denied" (internal quotation marks omitted)).  "[A] party need not prevail on every issue to be considered a Rule 54(d) prevailing party," although "it is not an abuse of discretion for a district court to refuse to award costs to a party that was only partially successful."  *Cantrell*, 69 F.3d at 458, 459; *see also Barber v. T.D. Williamson, Inc.*, 254 F.3d 1223, 1234 (10th Cir. 2001) ("in cases in which the prevailing party has been only partially successful, some courts have chosen to apportion costs among the parties or to reduce the size of the prevailing party's award to reflect the partial success").  Courts have also denied costs if they "are unreasonably high or unnecessary . . . or the issues are close and difficult."  *Cantrell*, 69 F.3d at 459.  "The burden is on the non-prevailing party to overcome [the presumption in favor of awarding costs to the prevailing party]."  *Rodriguez*, 360 F.3d at 1190.

Defendant objects to the award of costs on the grounds that (1) plaintiff was only partially successful in the litigation, (2) "the one triable issue in th[e] case was close and difficult," and (3) the costs associated with transcripts "are unreasonably high and unnecessary."  Docket No. 136 at 2.  Defendant requests that the Court reduce the costs award by seventy-five percent to account for these factors.  *Id.* at 3.

As an initial matter, the Court declines to apply an across-the-board reduction to plaintiff's costs award based on plaintiff's limited success. *See* Docket No. 136 at 2. Plaintiff's claims were factually interrelated, and defendant has not shown that any of the costs were unnecessary to plaintiff's pursuit of her successful FMLA interference claim. *See Semler v. Geico Gen. Ins. Co.*, 2014 WL 6775412, at *3-4 (W.D. Okla. Dec. 1, 2014) (declining to reduce costs award because the defendant failed to show that the costs taxed were unrelated to the claim upon which the plaintiff prevailed).

The Court also overrules defendant's objection to the costs assessed for the deposition transcripts of plaintiff, Tyler Farley, Lauren Worth, Matthew Halker, David Hart, and Travis Hutchinson. Pursuant to 28 U.S.C. § 1920, a court may tax as costs "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case." Courts have found deposition transcripts to be "necessarily obtained for use" where they are needed for "effective and efficient trial preparation or presentation" or relied upon by the court in resolving a dispositive motion. *Crandall v. City & Cty. of Denver, Colo.*, 594 F. Supp. 2d 1245, 1247-48 (D. Colo. Jan. 15, 2009) (internal quotation marks omitted). In contrast, "transcriptions that are obtained solely for discovery purposes or for the convenience of counsel are generally not taxable." *Id.* at 1248.

Here, the deposition testimony of plaintiff, Ms. Farley, and Ms. Worth was both relied upon by the Court in denying summary judgment as to the FMLA interference and referred to during the trial. *See* Docket No. 75 at 16-17; Docket No. 103 at 1-2; Docket No. 104 at 2. The deposition transcripts for plaintiff, Ms. Farley, and Ms. Worth were therefore "necessarily obtained for use" in the litigation. *See Crandall*, 594 F. Supp. 2d

at 1247; *see also id.* at 1254 (taxing costs of deposition transcripts actually used at trial). The Court reaches the same conclusion as to the deposition transcripts for Mr. Halker, Mr. Hart, and Mr. Hutchinson. While these depositions were not specifically referred to by the Court in the portion of the summary judgment order addressing plaintiff's FMLA interference claim, all three individuals testified at trial. *See* Docket No. 103 at 2-3. The Court therefore finds that the deposition transcripts were reasonably necessary for plaintiff's "effective and efficient trial preparation or presentation." *Crandall*, 594 F. Supp. 2d at 1248. At the very least, defendant has made no showing to the contrary. *See Rodriguez*, 360 F.3d at 1190; *see also* 10 Fed. Prac. & Proc. Civ. § 2679 (3d ed.) ("Of course, the party objecting to the clerk's taxation has the burden of persuading the court that it was improper.").[10]

By comparison, the Court sustains defendant's objection to the costs of the deposition transcript for Mr. Lowry. The Court did not rely on Mr. Lowry's deposition testimony in considering plaintiff's FMLA interference claim on summary judgment. *See* Docket No. 75 at 14-15. In addition, the Court excluded Mr. Lowry's testimony at trial, finding it irrelevant to the remaining issues in the case. Because Mr. Lowry's deposition testimony was unrelated to plaintiff's success on her FMLA interference claim, the Court will modify the costs award to exclude the $815.40 in costs taxed for Mr. Lowry's deposition transcript. *See Gen. Steel Domestic Sales, LLC v. Chumley*, No. 10-cv-

---

[10]According to the Bill of Costs, defendant also stipulated to the costs of the deposition transcripts of plaintiff, Ms. Worth, Ms. Farley, Mr. Halker, Mr. Hart, and Mr. Hutchinson. *See* Docket No. 134 at 4. Because the Court finds these costs to be taxable, the Court need not decide whether defendant's stipulation, by itself, precludes an objection to the Clerk's taxation of costs related to the deposition transcripts.

01398-PAB-KLM, 2013 WL 4434243, at *2 (D. Colo. Aug. 16, 2013) (denying costs for transcript of motions hearing where the "motion was not related to General Steel's ultimate success on its false advertising claim").

Defendant's final argument is that the Court should reduce plaintiff's costs award because the only issue tried to the jury was "close and difficult, as evidenced by the jury's difficulty in reaching a verdict." Docket No. 136 at 2. The Court disagrees. Contrary to defendant's assertion, this case presented a straightforward claim of FMLA interference based on plaintiff's inclusion in the May 2015 layoff. The jury was presented with only two factual issues at trial: (1) whether "the transitioning of plaintiff's work to other project managers in anticipation of her maternity leave played a role in her dismissal," Docket No. 75 at 16 (internal citations omitted); and (2) whether defendant acted in good faith. Defendant's claim that the jury had difficulty reaching a consensus is speculative. In any event, even if the case was "close" or "difficult," it would not require the Court to impose the "severe penalty" of denying costs to the prevailing party. *See Rodriguez*, 360 F.3d at 1190-91 (holding that the district court did not abuse its discretion by awarding costs to the prevailing party even though the district court concluded that the case presented a "close and difficult question"). Because defendant has not offered any specific reason why plaintiff should be penalized in this case, the Court declines to reduce the award of costs on the basis that the "triable issue in this case was close and difficult." Docket No. 136 at 2.

In summary, with the exception of Mr. Lowry's deposition transcript, defendant has failed to meet its burden of showing that the Clerk's taxation of costs was improper. Plaintiff is therefore awarded $6,256.29 in taxable costs.

**IV.  CONCLUSION**

For the foregoing reasons, it is

**ORDERED** that Plaintiff's Motion for Attorney's Fees [Docket No. 132] is

**GRANTED** in part and **DENIED** in part as stated in this order.  It is further

**ORDERED** that plaintiff is awarded $149,531.25 in attorney's fees and $5.94 in

non-taxable costs.  It is further

**ORDERED** that Halker Consulting LLC's Motion to Review Taxation of Costs

[Docket No. 136] is **GRANTED** in part and **DENIED** in part as stated in this order.  It is

further

**ORDERED** that plaintiff is awarded $6,256.29 in taxable costs.

DATED August 12, 2019.

BY THE COURT:

 s/Philip A. Brimmer
PHILIP A. BRIMMER
Chief United States District Judge